# EXHIBIT B



# PARKER LAW GROUP

March 11, 2024

Bitcoin Depot Operating, LLC
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Re:    Glenda J. Mooneyham, on behalf of herself and all others similarly situated, v. Bitcoin Depot, Inc.; Bitcoin Depot Operating, LLC (d/b/a Bitcoin Depot); and Circle K. Stores, Inc.
C/A No.: 2024-CP-40-01549

Dear Sir or Madam:

Enclosed please find a copy of the filed Summons & Complaint for service upon you as Registered Agent for the Defendant Bitcoin Depot Operating, LLC (d/b/a Bitcoin Depot) regarding the above-referenced matter.

With kind regards, I am

Sincerely,

Derek D. Tarver

DDT/jlm
Enclosures

cc:    Gibson Solomons, III, Esq.

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | CIVIL ACTION NO. 2024-CP-__-_____ |
| | ) | |
| Glenda J. Mooneyham, on behalf of | ) | |
| herself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CLASS ACTION SUMMONS** |
| v. | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| Bitcoin Depot, Inc.; Bitcoin Depot | ) | |
| Operating, LLC (d/b/a Bitcoin Depot); | ) | |
| Circle K Stores, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your answer to said Complaint on the subscribed at their office, 101 Mulberry Street East, Hampton, South Carolina, within thirty (30) days after the service hereof; exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

*[signature page to follow]*

PARKER LAW GROUP, LLP

BY:  *s/ Derek D. Tarver*
      Lee D. Cope (SC Bar # 14361)
      lcope@parkerlawgroupsc.com
      Derek D. Tarver (SC Bar # 103289)
      dtarver@parkerlawgroupsc.com
      101 Mulberry Street East
      Post Office Box 487
      Hampton, SC 29924
      T: (803) 903-1781
      F: (803) 903-1793

      *and*

      Gibson Solomons, III (SC Bar #68291)
      gsolomons@speightsandsolomons.com
      SPEIGHTS & SOLOMONS, LLC
      100 Oak Street East
      Post Office Box 685
      Hampton, South Carolina 29924
      T: (803) 943-4444
      F: (803) 943-4599

March 8, 2024.          ATTORNEYS FOR PLAINTIFF
Hampton, South Carolina

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | CIVIL ACTION NO. 2024-CP-__-_____ |
| | ) | |
| Glenda J. Mooneyham, on behalf of | ) | |
| herself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| v. | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| Bitcoin Depot, Inc.; Bitcoin Depot | ) | |
| Operating, LLC (d/b/a Bitcoin Depot); | ) | |
| Circle K Stores, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Glenda J. Mooneyham, on behalf of herself and all others similarly situated, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a resident of Lexington County, South Carolina.

2. Defendant Bitcoin Depot, Inc. is a Delaware corporation with its principal place of business in Georgia.

3. Defendant Bitcoin Depot Operating, LLC, is a foreign LLC registered to do business in South Carolina. As an LLC, Bitcoin Depot is considered a resident of the state of each of its members. According to public filings by Bitcoin Depot, Inc., Bitcoin Depot Operating, LLC, is a wholly owned subsidiary of BT HoldCo, LLC, of which Bitcoin Depot, Inc. is the sole managing member. Accordingly, Bitcoin Depot Operating, LLC, is considered a resident of the states of Delaware and Georgia.

4. Bitcoin Depot, Inc., and Bitcoin Depot Operating, LLC, are referred to collectively hereinafter as the "Bitcoin Depot Defendants."

1

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

5. The Bitcoin Depot Defendants conduct substantial business in and directed towards South Carolina, including but not limited to: (i) purposefully placing, operating, maintaining, and deriving substantial revenues from 145 separate Bitcoin Depot ATMs in the State, including the Bitcoin Depot ATMs at issue in this case; (ii) advertising its Bitcoin Depot ATMs to residents of the State; and (iii) conducting business with and deriving revenue from residents of the State who use its Bitcoin Depot ATMs, including Plaintiff.

6. Defendant Circle K Stores, Inc., ("Circle K") is a foreign corporation registered to do business in South Carolina. Circle K is a Texas corporation with its principal place of business in Arizona.

7. Circle K conducts substantial business in and directed toward South Carolina, including but not limited to: (i) owning, operating, and/or deriving substantial revenue from 255 separate Circle K convenience stores in the State, including the Circle K stores at issue in this case; (ii) advertising directly to residents in the State; (iii) employing a substantial number of employees and agents within the State; and (iv) conducting business with and deriving revenue from residents of the State who shop at its stores, including Plaintiff.

8. Venue is appropriate in this Court because, upon information and belief, the Bitcoin Defendants' principal place of business in South Carolina is in Richland County.

## FACTS

**I.    Elder financial scams are an endemic problem, well-known by Bitcoin Depot and others in the financial services sector.**

9. Elder financial scams are an endemic problem, well-known in the financial services industry.

2

10. The Federal Trade Commission ("FTC") reported that in 2022 alone, elder financial scams accounted for a reported loss of $1.6 billion, an increase from the reported $1 billion lost due to elder financial scams in 2021.[1]

11. The Consumer Financial Protection Bureau reported in February 2019 that an estimated $2.9 billion to $36.5 billion is lost every year to financial exploitation of older adults.[2] The Bureau reported that "Since 2013, financial institutions have reported to the federal government over 180,000 suspicious activities targeting older adults, involving a total of more than $6 billion. These reports indicate that financial exploitation of older adults by scammers, family members, caregivers, and others is widespread in the United States." *Id.*

12. Many forms of elder financial scams involve transactions centered upon untraceable cryptocurrency, such as Bitcoin.

13. The FTC reported that between January 2021 and June 2022, more than 46,000 persons reported they had been victims of cryptocurrency scams, amounting to losses of more than $1 billion, the reported median loss of which was $2,600.[3] The most common cryptocurrency the victims reported paying to scammers Bitcoin was involved in 70% of the scams. *Id.*

14. Elder financial scams involving cryptocurrency take a number of forms. One such scam, pertinent to this case, involves a scammer impersonating the victim's bank, the government, a utility company, or relative via the telephone. The scammer convinces the victim of an artificial problem requiring urgent action, and further convinces the victim that the only way to resolve the problem is to deposit cash into a cryptocurrency-vending Automatic Teller Machine ("ATM"),

---

[1] Federal Trade Commission, *Fighting fraud against older adults* (Oct. 18, 2023) https://consumer.ftc.gov/consumer-alerts/2023/10/fighting-fraud-against-older-adults#:~:text=While%20younger%20people%20were%20still,%241%20billion%20the%20year%20before.
[2] Consumer Financial Protection Bureau, *Suspicious Activity Reports on Elder Financial Exploitation: Issues and Trends* (Feb. 2019) cfpb_suspicious-activity-reports-elder-financial-exploitation_report.pdf (consumerfinance.gov).
[3] Federal Trade Commission, *Reports show scammers cashing in on crypto craze* (June 3, 2022) https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2022/06/reports-show-scammers-cashing-crypto-craze

3

which converts the victim's U.S. Dollars into untraceable cryptocurrency, and to transfer the Bitcoin to a "secure" Bitcoin wallet. *Id.* The scammer then sends the user a QR code and instructs the user to hold the QR code up to the ATM camera, but the QR code is embedded with the scammer's Bitcoin wallet address, and so the Bitcoin is deposited directly into the scammer's online Bitcoin wallet (this scam is hereinafter referred to as "the Cryptocurrency ATM Scam"). *Id.* According to the FTC, the median individual reported loss for persons in their 70s involved in cryptocurrency scams was $11,708. *Id.*

> a. **The Bitcoin Depot Defendants and Circle K are expressly aware that Bitcoin Depot ATMs in Circle K stores are commonly used to perpetuate the Cryptocurrency ATM Scam, fraud, money laundering, and to pay for illegal goods and services.**

15. The Bitcoin Depot Defendants are engaged in the business of placing and remotely operating cryptocurrency ATMs through which they sell fractional shares of the cryptocurrency Bitcoin. As late as 2021, the Bitcoin Depot Defendants had placed and were operating more than 3,000 Bitcoin ATMs in the United States and Canada.

16. According to Bitcoin Depot, Inc., in 2021, Bitcoin Depot, Inc., and Circle K entered a "long-term, strategic partnership" under which these Defendants agreed to place Bitcoin Depot ATMs in Circle K stores through the United States.[4]

17. According to Bitcoin Depot, Inc.:

> By adding Bitcoin ATMs to the Company's stores, Circle K can attract new customers to their stores, offer financial access to underserved communities, and set themselves apart from other retailers with this new technology. Through our collaborative partnership, we aim to provide new ways for people to buy bitcoin instantly in a familiar environment in their local neighborhood Circle K.

---

[4] Bitcoin Depot, *Bitcoin Depot Announces Long-Term Partnership with Circle K in U.S. and Canada: Thousands of Circle K Locations to Host Bitcoin Depot ATMs* (July 22, 2021) https://www.prnewswire.com/news-releases/bitcoin-depot-announces-long-term-partnership-with-circle-k-in-us-and-canada-301339512.html.

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

As demand for cryptocurrency increases, more and more customers are visiting convenience stores to use Bitcoin ATMs. To use a Bitcoin ATM, someone would visit a Bitcoin Depot ATM within a Circle K, insert cash after providing his or her crypto wallet address, and crypto would be sent immediately to the wallet. The whole process from signing up for an account to completing a transaction takes about 1-2 minutes. Anyone looking to use a Bitcoin Depot ATM can find one at bitcoindepot.com where all Circle K locations with bitcoin ATMs are listed.

*Id.*

18. Regarding Bitcoin Depot, Inc., and Circle K's partnership, Circle K made the following statement through its Senior Vice President of Global Merchandise and Procurement, Danny Tewell:

At Circle K, we are passionate about making our customers' lives a little easier every day, and we are continually looking at ways to enhance their experience in our stores and be their favorite stop for a growing range of needs and occasions. Our partnership with Bitcoin Depot further builds on this commitment, giving our brand an important, early presence in the fast-growing cryptocurrency marketplace as a convenient destination where customers can buy Bitcoin.

*Id.*

19. The Bitcoin Depot Defendants and Circle K are expressly aware that Bitcoin Depot ATMs are "exploited" by criminals "to facilitate illegal activity such as fraud, money laundering, gambling, tax evasion, and scams," including the Cryptocurrency ATM Scam.[5]

20. On their website, the Bitcoin Depot Defendants published an article titled "What Crypto Scams Seniors Should Watch For." In this article, the Bitcoin Depot Defendants expressly recognized that: "Seniors are particularly vulnerable to these [cryptocurrency] scams, as they may be more trusting of strangers and less familiar with cryptocurrency works. That's not to say

---

[5] Bitcoin Depot, Inc., Form 10-Q, United States Securities and Exchange Commission, p. 67 (Sept. 30, 2023).

5

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

there aren't some pretty savvy elders out there, but in general, those over the age of 60 are prone to falling for scams more quickly than younger people."[6]

21. The Bitcoin Depot Defendants further recognized in the same publication that "Elder theft and scams are at an all-time high . . . ." and listed a variety of cryptocurrency scams targeting the elderly, including "the grandparent scam," "fake cryptocurrency giveaways," "tech support scams," and "romance scams." *Id.*

22. The Bitcoin Depot Defendants and Circle K, through their "partnership," claim to have taken steps to prevent, intercept, and/or mitigate the elder financial scams involving its ATMs.[7]

23. For example, the Bitcoin Depot Defendants published an article on its website titled "Protecting Yourself from Bitcoin ATM Scams and Fraud" in which it expressly recognized that "these [Bitcoin] ATMs can be a target for scammers and fraudsters" and so they "believe[s] that it is important to educate our customers on potential scams and fraud." *Id.*

24. In that article, the Bitcoin Depot Defendants assert that:

> At Bitcoin Depot, we take the security of our customers very seriously. We employ various measures to protect our customers from scams and fraud, such as:
>
> 1. We use state-of-the-art security measures to protect our Bitcoin ATMs from tampering and other types of fraud.
>
> 2. We provide our customers with educational resources on Bitcoin ATM scams and fraud so that they can be better prepared to identify and avoid them.
>
> 3. Customer Support staff is readily available if customers have any questions or concerns about a potential transaction.
>
> 4. We post scam warnings on all kiosks and prompt customers before completing each transaction to protect our customers by

---

[6] Bitcoin Depot, *What Crypto Scams Seniors Should Watch For* (May 23, 2023) https://bitcoindepot.com/bitcoin-atm-info/what-crypto-scams-seniors-should-watch-for/.
[7] Bitcoin Depot, *Protecting Yourself from Bitcoin ATM Scams and Fraud* (last referenced December 15, 2023) https://bitcoindepot.com/scam-fraud/.

6

> providing information about common scams and advising customers on how to avoid them.
>
> By taking these measures, we are able to provide our customers with a safe and secure Bitcoin ATM experience.

*Id.*

25. On September 30, 2023, Bitcoin Depot, Inc., admitted in a public 10-Q filing with the Securities Exchange Commission that it was aware that "***[o]ur products and services may be exploited to facilitate illegal activity such as fraud, money laundering, gambling, tax evasion, and scams.***"[8]

26. On September 30, 2023, Bitcoin Depot, Inc., made the following explicit admission to the SEC and its shareholders regarding its and Bitcoin Depot Operating's services:

> ***The highly automated nature of, and liquidity offered by, our services make us and our users a target for illegal or improper uses, including scams and fraud directed at our users, fraudulent or illegal sales of goods or services, money laundering, and terrorist financing. Our risk management policies, procedures, techniques, and processes may not be sufficient to identify all risks to which we are exposed, to enable us to prevent or mitigate the risks we have identified, or to identify additional risks to which we may become subject in the future.***
>
> ....
>
> ***While we have designed our risk management and compliance framework to detect significant illicit activities conducted by our potential or existence users, we cannot ensure that we will be able to detect all illegal or other illicit activity on our platform.***[9]

27. By recognizing the prevalence and severity of elder financial scams involving cryptocurrency and their ATMs, and by holding themselves out to the public and their customers as "employ[ing] various measures to protect their customers from scams and fraud," the Bitcoin Depot Defendants and Circle K, through their partnership with the Bitcoin Depot Defendants,

[8] Bitcoin Depot, Inc., Form 10-Q, United States Securities and Exchange Commission, p. 67 (Sept. 30, 2023).
[9] Bitcoin Depot, Inc., Form 10-Q, United States Securities and Exchange Commission, pp. 63, 67 (Sept. 30, 2023) (emphasis added).

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

assumed a duty to ensure that their efforts to prevent, intercept, and mitigate elder financial abuse through Bitcoin Depot ATMs were reasonable.

28. However, the Bitcoin Depot Defendants and Circle K are expressly aware that the "measures" they claim to have taken are ineffective, and Bitcoin Depot ATMs continue to be used in cryptocurrency scams, money laundering, and transactions involving illegal goods and services.

29. Further illustrating this point, the Bitcoin Depot Defendants have received several complaints directly from consumers that they or a loved one had been victimized by scams utilizing Bitcoin Depot ATMs, including the following complaints posted to Bitcoin Depot's Better Business Bureau profile:[10]

    a. November 22, 2023 - My elderly parents were scammed by scammers using one of their machines. Most people who understand BitCoin and cryptocurrencies are not using these machines. I would wager the majority of people who are purchasing crypto through these are likely being scammed as the price hike is around 28%. There are likely a lot of scams that take advantage of these machines. As far as I am concerned, profit for this company is riding on the back of scammers. They need to be held accountable and actually take fraud seriously. I will be taking legal action against this company and attempting to rally people for a class action lawsuit. This company is profiting from scammers. If their system allows this to happen there needs to be some reasonable action by them to attempt to stop it from happening. If you are interested in banding together to do something about this; I created the email address below. The email is masked because they won't let me put one in. Remove the * from the @ and the . for the address. If you have been scammed or know someone send an email. I have contacted the local authorities and working to get the attorney general from my state involved. takeemdown881*gmail*com

    b. July 25, 2023 - Yesterday I called my Mom on the way home from work and she was telling how tired she was, I asked her why and she said she had to go to the bank, surprised me and she said she received an Apple alert stating her computer was compromised and they got her to go to the bank, withdraw ***** dollars and go to a bitcoin shop where she deposited it. She was told that they would wire her money back to her and it would then be safe. While on the phone they said they

---

[10] https://www.bbb.org/us/ga/atlanta/profile/virtual-currency/bitcoin-depot-0443-28143445/customer-reviews#105203130; https://www.bbb.org/us/ga/atlanta/profile/virtual-currency/bitcoin-depot-0443-28143445/complaints

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

transferred her to a secure line with **** of America = the two names she gave me are *************************** and **************** tried calling the same people yesterday - ***************and they said it was a medical company who help people who fall (it was clearly a call center)I used an app today that hid my phone number and gave my name as ******************* and said I was writing a paper when I got a security message from Apple The first person I talked to handed me off to someone and did not give his name, the person he passed me to called himself ****, he started asking me what games I played and what I did on the computer, when I asked him how does this pertain to me working on my paper he hung up. The time I called it was the phone number from the apple support pop up *************** - I told him the same story and he started asking me about my network and other odd questions, so I asked him what address he was calling from and he tried to tell me he was in **********, and I said it does not sound like it and he hung up. I have the bitcoin recipient (sic) and other information as well. The error message had Threat Detected - Stuxnet.Trojan-Spyware App: ads.fiance-track(2).**** Bitcoin knowingly took money from a 75 year old woman, and helped her, and continued a scam that was already in progress, and will not help

[Bitcoin Depot's response: "Please find our response attached."]

August 1, 2023 - I am rejecting this response because your company takes no responsibility to ensure the elderly are not scammed. If you saw the video footage you know she was on the phone the whole time and one of the workers there was concerned about her, but did nothing. You don't think it is odd a seventy five year old woman would be buying so much cryptocurrency? Not including my Mom there has been a woman in *****, a woman in ************, ***********, ******** and****. You say that there are warnings but I have seen pictures on the kiosk and they do not help the elderly. You company possibly made up to ***** dollars off my Mothers transaction and per one report your owner ******* is worth millions, yet your company continues to enable scammers to take advantage of people

c. June 13, 2023 - On June 5, 2023 at 11:15 AM I was scammed and pressured to deposit $2,900 USD on Order:QSLE3721 and $11,800 USD on Order QFW4RMWX at 12:03 PM PDT into a Bit Coin machine located at **************************************************** ***. My driver's license and a photo of my face was scanned and a barcode that the scammer texted to me. I reported the scam to Bit Coin's ****************************************** since the incident occurred and to this date they have not done anything to help me recover the stolen money. I've received emails from Jhon, ********************, ******, and ************************* each time requesting the same information which I have provided over and over again. The nature of the dispute is that I've been scammed via their Bit Coin machine. I explained to them how the scam occurred, sent them copies of the two receipts, gave them my name, phone number and

email address, and explained how the scam happened. Bit Coin Depot is responsible for their machines and transactions that take place on them and I am hoping they would help me recover the money that was stolen from me.

[Bitcoin Depot's response: "Please find our response attached."]

June 22, 2023 -

I am rejecting this response because: In paragraph 3, *********************** states that Bit Coin Depot "only permit customers to use our service to send cryptocurrency to their own custodial (i.e. their Coinbase account) or non-custodial (i.e. their Bitcoin Depot wallet app) wallet." However, Bit Coin did not verify whether the deposit was to an "own custodial" or "non-custodial" wallet, based on the fact that the machine scanned my personal ** (********* Driver's License) and my facial recognition by taking a picture of my face at the time. I do not have a custodial or non-custodial account and the information on the scammer's barcode did not match the two forms of verification that I provided. Since there was a discrepancy between the scammer's account, NOT matching the ** and facial recognition provided, Bit Coin should not have allowed this transaction to go through. In paragraph 4 ****************** claims that I initiated two transactions on my own account, which is false because I do not have an account with Bit Coin.
Secondly, I was nervous and shaking with fear when I was depositing the 100 dollar bills in the machine. I had never done this before and it was all foreign and unfamiliar to me; the scammer was giving me directions on my cell phone (evidenced by the earplugs I was using so my hands would be free to make the deposit into the machine). As I explained in my reports to the ********* CFTC and a call to the Consumer Complaints in Georgia, I was under the impression that the money was being held in a safe account for me (as I was told by the scammer) and that I would see it back into my Chase account the following day, June 6, 2023. I didn't realize that I was scammed until late, (after banking hours) the following day, 6/6/23,that the money was not there in my ********* Account. Thus, the delayed reporting to Bit Coin that I was scammed and in addition, when I tried calling Bit Coin on the telephone number they provided, they never answered. The phone rang and rang and rang without anyone picking it up.

d. April 7, 2023 - My household is being victimized by extortion via a dating site to the tune of $6000 which required a family member to send funds via this company. We have reached out asking for some sort of resolution, company says it cannot do anything, will not trace the user. We have filed reports with law enforcement. This company provides zero safety for users and asserts an inability to assist when clearly this is not the case. They are the middlemen for fraud and that seems to be the entire business play.

[Bitcoin Depot's response: "Please find our response attached."]

e. March 15, 2023 - My mom was the victim of a fishing scam where they were posing as PayPal and then the *****Fargo fraud department. She was conned into putting a lot of cash into a Bitcoin Depot machine. This happened March 13, 2023.

[Bitcoin Depot's response: "Please find our response attached."]

f. October 28, 2022 - On 10/25/22 I received a call from ********** impersonating a federal agent. Had a lot of my past information like vacations address. etc. Unfortunately I was in a panic because they were transferring me from "agent" to "agent" stating different criminal records I need adhere to. Hadan a warrant number and everything. As stated unfortunately I did follow all the steps of this so called agent and now I am down $9,361. I should have noticed this indeed was a scam but it was to late. They had me put all my cash into a bitcoin depot atm and when I called customer support indeed it was sent and there was no way to reverse this. Bank can not help because it was me that withdrew the money and I have let government know. Unfortunately there is no way around this. Qr code was sent from a number which should have triggered me number was **********. I have no other avenue to approach this. I do not know if BBB does handle or help in these scenarios but i figure i reach out nonetheless.

[Bitcoin Depot's response: "Please find our response attached."]

g. March 21, 2022 - Entered by BBB Staff - lj Consumer is a Senior. Consumer used a Bitcoin Depot kiosk machine located inside Circle K grocery store. The address is *****************************************.Transaction number 2f7ed2dbc4. She had received a Gmail from her nephew requesting money. Consumer does not have his phone number. She was certain that she was communicating with her nephew. He knew things only a family member would know. He was told this was an easy way to send money. She inserted $2020 cash into the machine. She was trying to send $2000 but added an extra $20 by mistake. She thought she was transferring money to her nephew. The money did not go to her nephew. She created a wallet instead of sending money. She lost $400. Wallet is only showing $1600. Consumer spoke with a company representative last Friday March 18th. Phone number ************. Representative stated she could not get her money back. Consumer was unable to withdraw her money from the Bitcoin machine.

[Bitcoin Depot's response: "Please find our response attached."]

30. Based on the foregoing, the Bitcoin Depot Defendants and Circle K are expressly aware that the measures they claim to have taken to protect against Bitcoin Depot ATMs being used in

scams and other illegal conduct are ineffective, and that Bitcoin Depot ATMs continue to be used by scammers to defraud victims, in particular, elderly victims.

**II.      Bitcoin Depot and Circle K facilitated Plaintiff's and others' victimization through the Cryptocurrency ATM Scam.**

31. Plaintiff Glenda J. Mooneyham is a recently widowed, seventy-three-year-old woman who lives alone in Lexington, South Carolina.

32. Plaintiff was the target and victim of a Cryptocurrency ATM Scam. On Wednesday, November 15, 2023, imposters claiming to represent Plaintiff's bank and the Federal Trade Commission ("FTC") called her personal telephone and advised her that her bank account had been compromised and was being investigated by the FTC. The scammers advised that someone was attempting to withdraw all of her money from her account via online transfers, and to protect her money she had to withdraw it from the bank and deposit it into a Bitcoin wallet created for her by the bank, via a Bitcoin Depot ATM at the local Circle K convenience store. The scammers warned that employees of the local bank branch may be involved in the hack, and so not to disclose to them why she was withdrawing her money.

**a. The First Transaction – November 15, 2023.**

33. On Wednesday, November 15, 2023, at the instruction of the scammers, Plaintiff withdrew $15,000 in cash from her savings account in the form of one-hundred and fifty $100 dollar bills.

34. Immediately after withdrawing the $15,000 in cash on November 15, 2023, at the instruction of the scammers, Plaintiff took the cash to a specific Circle K store located at 5445 Augusta Road, in Lexington, South Carolina, and deposited the entirety of the cash – one $100 bill at a time – into the Bitcoin Depot ATM located there.

12

35. Bitcoin Depot ATMs accept only up to $15,000 per transaction and accept only one bill at a time. Accordingly, Circle K's employees present at the time of the incident observed the following: Plaintiff, a seventy-three-year-old woman, entered the Circle K with a stack of one-hundred and fifty $100 bills, while receiving instructions from a person on the cellphone to log in to the Bitcoin Depot ATM. Plaintiff, due to severe tremors and nerves, struggled for more than twenty minutes to deposit the maximum possible value of cash into the machine, one bill at a time. Plaintiff then held up to the ATM's camera a QR code on her phone that had been sent to her by the scammers. The ATM read the QR code and sent the BTC to the scammer's bitcoin wallet. This transaction took an abnormally long amount of time to complete due to Plaintiff's lack of familiarity with the Bitcoin Depot ATM and the time it took her to deposit the one-hundred and fifty $100 bills into the machine.

36. Notwithstanding the irregularity of this scene and Circle K's express knowledge that Bitcoin Depot ATMs are often used as vehicles for elderly financial scams, Circle K and its employees made no meaningful effort to intervene, to warn Plaintiff that the Bitcoin Depot ATM was known for being part of such scams, or to warn Plaintiff that she may be in the process of being scammed.

37. The Bitcoin Depot ATM accepted the $15,000 cash in exchange for .30521466 of a bitcoin ("BTC"), at a sales price of $49,135.91 per BTC, which Bitcoin Depot deposited into the scammer's bitcoin wallet.

**b. The Second Transaction – November 17, 2023.**

38. Less than forty-eight hours later, on Friday, November 17, 2023, Plaintiff withdrew a second $15,000 in cash from her savings account in the form of one-hundred and fifty $100 dollar bills, at the instruction of the scammers.

13

39. Immediately after withdrawing the second $15,000 in cash, at the instruction of the scammers, Plaintiff took the cash to the same specific Circle K store located at 5445 Augusta Road, in Lexington, South Carolina, and deposited the entirety of the cash into the Bitcoin Depot ATM located there.

40. Circle K's employees present at the time of the incident observed the following: Plaintiff, a seventy-three-year-old woman, for the second time in forty-eight hours, entered the Circle K *again* with a stack of one-hundred and fifty $100 bills, while following the instructions of a person on her cellphone to login to the Bitcoin Depot ATM. Plaintiff, due to severe tremors and nerves, *again* struggled for more than twenty minutes to deposit the maximum possible value of cash into the machine, one bill at a time. Plaintiff *again* held up to the ATM's camera a QR code on her phone that had been sent to her by the scammers. The ATM read the QR code and sent the BTC to the scammer's bitcoin wallet. This transaction took an abnormally long amount of time to complete due to Plaintiff's lack of familiarity with the Bitcoin Depot ATM and the time it took her to deposit the one-hundred and fifty $100 bills into the machine.

41. Notwithstanding the irregularity of this scene and Circle K's express knowledge that Bitcoin Depot ATMs are often used as vehicles for elderly financial scams, Circle K and its employees *again* made no meaningful effort to intervene, to warn Plaintiff that the Bitcoin Depot ATM in the store was known for being part of such scams, or to warn Plaintiff that she may be in the process of being scammed.

42. The Bitcoin Depot ATM accepted the $15,000 cash in exchange for .31650111 BTC, at a sales price of $47,383.72 per BTC, which Bitcoin Depot deposited into the scammer's bitcoin wallet.

III. **The Bitcoin Depot Defendants & Circle K derive substantial income from use of Bitcoin Depot ATMs in the Cryptocurrency ATM Scam, money laundering schemes, the sale of illegal goods and services, and other crimes, and therefore intentionally take less-than-sufficient steps to intervene, prevent, or mitigate against these transactions.**

43. Notwithstanding their awareness that Bitcoin Depot ATMs are commonly used to facilitate elder financial scams through the Cryptocurrency ATM Scam, in addition to money laundering, the sale of illegal goods and services, and other crimes, the Bitcoin Depot Defendants and Circle K make no meaningful efforts to intervene in such scams, because they derive a substantial profit from the ATMs by selling BTC through the ATMs at an exorbitant markup from BTC's actual market value. For example:

 a. Upon information and belief, at the time of the First Transaction, the market value of 1 BTC was approximately $35,548.11, but the Bitcoin Depot Defendants sold the subject BTC at a 38% markup, at $49,135.91 per BTC, resulting in a profit of $4,148.03 for Bitcoin Depot as a result of the First Transaction.

 b. Upon information and belief, at the time of the Second Transaction, the market value of 1 BTC was approximately $36,164.82, but the Bitcoin Depot Defendants sold the subject BTC at a 31% markup, at $47,383.72 per BTC, resulting in a profit of $3,551.50 for Bitcoin Depot as a result of the Second Transaction.

 c. Upon information and belief, in total, The Bitcoin Depot Defendants and Circle K gained a profit of $7,699.53 as a result of scammers utilizing the Bitcoin Depot ATM as part of their defrauding Plaintiff.

44. The Bitcoin Depot Defendants and Circle K are fully aware that they can charge such exorbitant markups, and do charge such exorbitant markups, because: (i) a substantial portion of their market base uses the ATMs in scams and/or to launder and convert illicit funds, including

funds derived from scams such as the one in this case, into BTC that is untraceable and accepted in a variety of online marketplaces globally; and (ii) a substantial portion of its market base includes unsophisticated investors who know no better than to purchase BTC at a usurious rate not dissimilar to the rates charged by predatory payday lenders.

45. The Bitcoin Depot Defendants and Circle K are capable of implementing effective and sufficient checks and procedures both at the ATMs and internally that would intervene, prevent, mitigate, or deter the use of the ATMs in scams such as the one in this case, but knowingly choose not to adopt effective checks or balances because doing so would thwart a substantial volume of their business and the immense profit they gain in the form of more than 20% of every dollar inserted into the ATM.

## CLASS ALLEGATIONS

46. As noted above Plaintiff brings this action on behalf of herself and all others similarly situated as a class under Rule 23 of the South Carolina Rules of Civil Procedure ("SCRCP"), defined as follows:

> All persons who have suffered damages as a result of the dangers created and/or enabled and the Defendants' lack of due care in attending to this know behavior associated with Bitcoin ATM machines, particularly the use of Bitcoin ATM machines in predatory scams against the elderly.

Excluded from the Class are:

> Current and former officers and directors of the Defendants; members of the immediate families of the officers and directors of the Defendants; the Defendants' legal representatives, heirs, successors, assigns, any entity in which either of them has or had a controlling interest; any federal, state, or local governmental agencies; any judges who have decided or are assigned to decide some or all issues in this case any persons related to a judge in a manner that would disqualify the judge from hearing the case; and any chambers staff working for the assigned judge or other courthouse staff who perform tasks relating to this matter.

47. Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiffs' motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

48. This action is proper for Class treatment under Rules 23(a), SCRCP.

49. *Numerosity*: While the exact number and identifies of other Class Members are unknown to Plaintiff at this time, Plaintiff is aware that Bitcoin ATM scams have accounted for millions of dollars in losses to SC residents in the past 3 years. Class members exist, whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

50. *Commonality and Predominance*: There exists commonality in questions of law and a common nucleus of operative fact affecting the Class, in that Defendants' reckless, negligent, and improper conduct as well as the Defendants' physical interference with Plaintiffs' property rights has infringed and caused damage to Plaintiff and the Class Members' rights in the same or similar fashion as the Class Members. Moreover, answers to the questions of law and operative facts will drive resolution of the litigation and are capable of class wide resolution. Such questions are common to all Class members and predominate over any questions affecting individual Class Members and include:

> a. Whether Defendants negligently, recklessly, and willfully and wantonly facilitated, materially aided, took part in, and knowingly profited from fraud schemes and elder financial scams and other criminal acts conducted through their Bitcoin ATMs, by knowingly designing, placing, funding, advertising, maintaining, and making available those Bitcoin ATMs in such a manner as to

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

facilitate and encourage those criminal acts, and by intentionally not taking appropriate measures to mitigate the use of those Bitcoin ATMs in those criminal acts, with the actual and express knowledge that its Bitcoin ATMs would be and were being used for such purposes;

b.  Whether Defendant Circle K's installation, maintenance, and use and/or continued profiting from the placement of Bitcoin ATMs in its stores was reasonable;

c.  Whether the activity was of such a nature that the Defendants are strictly liable for any attendant damages;

d.  Whether Defendants' actions constitute a public or private nuisance;

e.  Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent future harm;

f.  Whether the members of the Class have sustained damages as a result of the Defendants' wrongful conduct;

g.  Whether Plaintiff and Class Members are easily identifiable based upon those persons who were the victim of scams or fraud conducted through Defendants' Bitcoin ATMs;

h.  Whether Defendants failed to exercise due and reasonable care in the operation of their businesses with the express knowledge of fraud scams and elder financial abuse being an epidemic;

i.  The appropriate measure of damages and other relief.

The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Defendants.

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

51. *Typicality.* Plaintiffs' claims and defenses are typical of, and are not antagonistic to, the claims of all Class Members, in that Plaintiffs and members of the Class sustained damages arising out of Defendants' uniform wrongful conduct.

52. *Superiority.* This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class may be small in comparison to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be difficult and not economical for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

53. *Adequacy.* Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel with substantial experience in litigating complex cases, including class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and members of the Class sustained damages as a result of Defendants' uniform conduct. Plaintiff also has no interests antagonistic to those of the Class,

19

and Defendants have no defenses unique to Plaintiff. Plaintiff and his Counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members. Rather, Plaintiff shares the same interest as all Class Members in remedying Defendants' unlawful conduct.

54. *Ascertainability:* While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are hundreds of Class members that can be easily ascertained. The transactions all have identifiable and objective markings.

55. *Amount in controversy per class member:* The primary relief sought under this class action is both injunctive and compensatory and thus the South Carolina requirement that each member have over one hundred dollars in damages does not apply. However, the damages to each property in the Class, including for diminution, far exceed one hundred dollars.

56. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23 are met, as Defendants have acted on grounds generally applicable to the Class, thereby necessitating injunctive or equitable relief with respect to the Class as a whole.

57. Defendants have acted, and refused to act, on grounds generally applicable to the Class and Subclasses, thereby necessitating final equitable relief with respect to the Class and Subclasses as a whole.

### FOR A FIRST CAUSE OF ACTION
**Against Bitcoin Depot, Inc. and Bitcoin Depot Operations, LLC**
**Participating or Materially Aiding the Financial Exploitation of a Vulnerable Adult**

58. The allegations above are incorporated herewith as if rewritten verbatim.

59. South Carolina's Omnibus Adult Protection Act ("SCOAA") expressly recognizes a civil claim for damages, including reasonable attorneys' fees, costs, and litigation expenses, against a

financial institution for "participating in or materially aiding the financial exploitation of a vulnerable adult." S.C. Code Ann. § 43-35-87(H). The SCOAA mandates that "[a]ny such claims shall be asserted by the vulnerable adult, or on his behalf by an appropriate guardian or representative who is not involved in or otherwise suspected of participating in the financial exploitation of the vulnerable adult, by filing a civil action in circuit court." *Id.*

60. The SCOAA includes within the definition of "vulnerable adult" "a person who is impaired in the ability to adequately provide for the person's own care or protection because of the infirmities of aging including, but not limited to . . . advanced age[.]" S.C. Code Ann. § 43-35-10(11).

61. Plaintiff is a "vulnerable adult" under the SCOAA, based on her advanced age, which is typically defined as 65 or older, and her inability to adequately provide for her own financial protection.

62. The SCOAA defines "exploitation" as including "causing a vulnerable adult to purchase goods . . . for the profit or advantage of the seller or another person through . . . defrauding the vulnerable adult through cunning arts or devices that delude the vulnerable adult and cause h[er] to lose money or other property." S.C. Code Ann. § 43-35-10(3)(c).

63. The SCOAA defines "financial institution" as "any bank, credit union, wealth management institution, or other financial services company." S.C. Code Ann. § 43-35-87(A).

64. The SCOAA expressly authorizes a financial institution that has reason to believe a vulnerable adult is being financially exploited to decline transactions to disburse money and to take action in furtherance of a determination, including making a report or providing access to or copies of relevant records to an investigative agency or law enforcement agency. S.C. Code Ann. § 43-35-87(H).

65. As to the Bitcoin Depot Defendants:

    a. Bitcoin Depot, Inc., and Bitcoin Depot Operations, LLC, are each a "financial institution" under the SCOAA because they provide financial services in the form of operating ATMs that convert U.S. Dollars into BTC, depositing those BTC into a bitcoin wallet, and distributing U.S. Dollars converted from BTC. As such, each Bitcoin Depot Defendant owes certain duties to take reasonable steps to prevent, intervene, intercept, and mitigate financial abuse of vulnerable adults who use its services.

    b. Both of the Bitcoin Depot Defendants are expressly aware of the risk of elder financial abuse and have made affirmations to the public and their customers that they employ measures "to protect [its] customers from scams and fraud" and that by employing those measures they are "able to provide [its] customers with a safe and secure Bitcoin ATM experience." Accordingly, each Bitcoin Depot Defendant has assumed a duty to take reasonable steps to prevent the financial exploitation of elderly adults taking place in whole or in part at their Bitcoin ATMs.

    c. As a financial services Company, each Bitcoin Depot Defendant owed a statutory duty to be aware of Plaintiff's status, age, and risk of being victimized under the "Know Your Customer" Rule under the Patriot Act and, if it did so, would have recognized that Plaintiff was a vulnerable senior.

    d. Plaintiff, as a senior citizen, is well-recognized within the cryptocurrency industry as a target for elder financial abuse, even according to the Bitcoin Depot Defendants' own publications.

e. The transactions at issue in this case were atypical and suggestive of a scam and should have triggered an alert with the Bitcoin Depot Defendants, because they involved a seventy-three-year-old woman depositing $30,000 in BTC at ATMs at the same Bitcoin ATM, within a forty-eight-hour period, into a bitcoin wallet that belonged to someone else.

f. Each Bitcoin Depot Defendant breached its duties to Plaintiff by negligently, grossly negligently, recklessly, and knowingly failing to implement checks and procedures both at its ATMs and internally that would effectively intervene, mitigate, or deter the use of its ATMs in scams such as the one in this case.

g. Each Bitcoin Depot Defendant, through its actions and failure to act, negligently, grossly negligently, and recklessly participated in and materially aided in the financial exploitation of Plaintiff, a vulnerable adult. Without each Bitcoin Depot Defendant's actions and failures, such exploitation would not have occurred.

h. In total, each Bitcoin Depot Defendant's negligent, grossly negligent, reckless, and knowing failure and refusal to implement appropriate and sufficient checks and procedures to intervene, mitigate, or deter the use of the ATMs described above in the subject scam was a direct and proximate cause of Plaintiff being scammed out of $30,000, while the Bitcoin Depot Defendants gained a profit of $7,799.53 as a direct result of the scam being committed.

<div align="center">

**FOR A SECOND CAUSE OF ACTION**
**Against Bitcoin Depot, Inc. and Bitcoin Depot Operations, LLC**
**Negligence, Gross Negligence, Recklessness, Wilful and Wanton Conduct**

</div>

66. The allegations above are incorporated herewith as if rewritten verbatim.

67. As to the Bitcoin Depot Defendants:

<div align="center">

23

</div>

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

a.  Each Bitcoin Depot Defendant is expressly aware of the risk of elder financial abuse and has made affirmations to the public and its customers that it employs measures "to protect [its] customers from scams and fraud" and that by employing those measures it is "able to provide [its] customers with a safe and secure Bitcoin ATM experience." Accordingly, each Bitcoin Depot Defendant has assumed a duty to take reasonable steps to prevent the financial exploitation of elderly adults taking part in whole or in part at its Bitcoin ATMs.

b.  As a financial services Company, each Bitcoin Depot Defendant owed a statutory duty to be aware of Plaintiff's status, age, and risk of being victimized under the "Know Your Customer" Rule under the Patriot Act and, if it did so, would have recognized that Plaintiff was a vulnerable senior.

c.  Plaintiff, as a senior citizen, is well-recognized within the cryptocurrency industry as a target for elder financial abuse, even according to the Bitcoin Depot Defendants' own publications.

d.  The transactions at issue in this case were atypical and suggestive of a scam, and should have triggered an alert with each Bitcoin Depot Defendant, because they involved a seventy-three-year-old woman depositing $30,000 in BTC at ATMs at two different convenience stores, within a forty-eight hour period, into a bitcoin wallet that belonged to someone else.

e.  Each Bitcoin Depot Defendant breached its duties to Plaintiff by negligently, recklessly, and knowingly failing to implement checks and procedures both at its ATMs and internally that would effectively intervene, mitigate, or deter the use of its ATMs in scams such as the one in this case.

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

f.  Each Bitcoin Depot Defendant through its actions and failure to act, negligently, grossly negligently, and recklessly participated in and materially aided in the financial exploitation of Plaintiff, a vulnerable adult. Without each Bitcoin Depot Defendant's actions and failures, such exploitation would not have occurred.

g.  In total, each Bitcoin Depot Defendant's negligent, reckless, and knowing failure and refusal to implement appropriate and sufficient checks and procedures to intervene, mitigate, or deter the use of the ATMs described above in the subject scam was a direct and proximate cause of Plaintiff being scammed out of $30,000, while the Bitcoin Depot Defendants gained a profit of $7,799.53 as a direct result of the scam being committed.

### FOR A THIRD CAUSE OF ACTION
**Against Bitcoin Depot, Inc., and Bitcoin Depot Operations, LLC**
**Voluntary Assumption of a Duty**

68. The allegations above are incorporated herewith as if rewritten verbatim.

69. Under South Carolina law, one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the others for harm resulting from his failure to exercise reasonable case to perform his undertaking.

70. As to the Bitcoin Depot Defendants:

a.  Each Bitcoin Depot Defendant is expressly aware of the risk of elder financial abuse and has made affirmations to the public and its customers that it employs measures "to protect [its] customers from scams and fraud" and that by employing those measures it is "able to provide [its] customers with a safe and secure Bitcoin ATM experience." Accordingly, each Bitcoin Depot Defendant has assumed a

duty to take reasonable steps to prevent the financial exploitation of elderly adults taking part in whole or in part at its Bitcoin ATMs.

b.  Plaintiff, as a senior citizen, is well-recognized within the cryptocurrency industry as a target for elder financial abuse, even according to the Bitcoin Depot Defendants' own publications.

c.  The transactions at issue in this case were atypical and suggestive of a scam, and should have triggered an alert with each Bitcoin Depot Defendant, because they involved a seventy-three-year-old woman depositing $30,000 in BTC at ATMs at two different convenience stores, within a forty-eight hour period, into a bitcoin wallet that belonged to someone else.

d.  Each Bitcoin Depot Defendant breached its duties to Plaintiff by negligently, recklessly, and knowingly failing to implement checks and procedures both at its ATMs and internally that would effectively intervene, mitigate, or deter the use of its ATMs in scams such as the one in this case.

e.  Each Bitcoin Depot Defendant's failures to exercise reasonable care in performing its assumed duty enhanced the risk of harm to Plaintiff. Specifically, each Bitcoin Depot Defendant through its actions and failure to act, negligently, grossly negligently, and recklessly materially aided in the financial exploitation of Plaintiff, a vulnerable adult. Without each Bitcoin Depot Defendant's actions and failures, such exploitation would not have occurred.

f.  In total, each Bitcoin Depot Defendant's negligent, reckless, and knowing failure and refusal to implement appropriate and sufficient checks and procedures to intervene, mitigate, or deter the use of the ATMs described above in the subject

scam was a direct and proximate cause of Plaintiff being scammed out of $30,000,

while the Bitcoin Depot Defendants gained a profit of $7,799.53 as a direct result

of the scam being committed.

### FOR A FOURTH CAUSE OF ACTION
**Against Bitcoin Depot, Inc., and Bitcoin Depot Operations, LLC**
**(Negligent Design/Failure to Warn)**

71. The allegations above are incorporated herewith as if rewritten verbatim.

72. The Bitcoin Defendants were negligent in the following regards:

    a. In designing and manufacturing the Bitcoin ATMs in such as manner as to facilitate victimization of users;

    b. In designing and manufacturing the Bitcoin ATMs without appropriate warnings or instructions that would have prevented the victimization of users;

    c. In designing and manufacturing the Bitcoin ATMs without appropriate fail safes to monitor use of the machine to prevent victimization of users;

73. As a direct and proximate result of the Bitcoin Defendants' placing a defective and unreasonably dangerous product into the stream of commerce, Plaintiffs have suffered damage to their property in the form of loss of title to cash assets deposited into the machines.

### FOR A FIFTH CAUSE OF ACTION
**Against Bitcoin Depot, Inc., and Bitcoin Depot Operations, LLC**
**(Strict Products Liability under S.C. Code Ann. § 15-73-10)**

74. The allegations above are incorporated herewith as if rewritten verbatim.

75. The Bitcoin ATM is defective and unreasonably dangerous to users because its design facilitates, enables, and manifests a known widespread victimization of users, who suffer damages in the form of loss of title to certain cash assets deposited into the machine.

76. Under South Carolina Code section 15-73-10, the Bitcoin Defendants' placement of the subject Bitcoin ATM into the stream of commerce for use in a defective and unreasonably dangerous condition establishes a prima facie case of strict liability in tort.

77. At all relevant times, feasible alternative designs existed in the form of, *inter alia*, improved warnings, instructions, fail safes, and monitoring of use.

78. Plaintiffs in this action could not have discovered this defect.

79. As a direct and proximate result of the Bitcoin Defendants' placing a defective product known to be unreasonably dangerous product into the stream of commerce, Plaintiffs have suffered damage to their property in the form of loss of title to cash assets deposited into the machines.

<center>

**FOR A SIXTH CAUSE OF ACTION**
**Against Bitcoin Depot, Inc., and Bitcoin Depot Operations, LLC**
**(Breach of Implied Warranties)**

</center>

80. The allegations above are incorporated herewith as if rewritten verbatim.

81. The Bitcoin Defendants impliedly warranted through their marketing, advertising, distribution, and sales of their Bitcoin ATMs that the machines were merchantable and fit for the ordinary purposes for which they were placed in the stream of commerce.

82. The Bitcoin Defendants breached these implied warranties of merchantability because the Bitcoin ATMs were neither merchantable nor fit for their intended purposes in that, by design, the machines facilitated victimization of the user.

83. As a direct and proximate result of the Bitcoin Defendants' placing a defective and unreasonably dangerous product into the stream of commerce, Plaintiffs have suffered damage to their property in the form of loss of title to cash assets deposited into the machines.

<center>28</center>

## FOR A SEVENTH CAUSE OF ACTION
**Against Bitcoin Depot, Inc., Bitcoin Depot Operations, LLC, and Circle K**
**Unfair and Deceptive Trade Practices – S.C. Code Ann. 39-5-10, et seq.**

84. The allegations above are incorporated herewith as if rewritten verbatim.

85. As to the Bitcoin Depot Defendants:

   a. Each Bitcoin Depot Defendant is expressly aware that its ATMs are used as vehicles by scammers to defraud the elderly and vulnerable both in this State and elsewhere.

   b. Notwithstanding this fact, each Bitcoin Depot Defendant has taken insufficient steps to prevent, intervene, or mitigate those instances in which its ATMs are used by scammers, because the Bitcoin Depot Defendants derive substantial revenue from the use of its ATMs in these scams.

   c. Each Bitcoin Depot Defendant could easily implement additional or different protocols or procedures to prevent their ATMs from being used by scammers, such protocols which other Bitcoin ATM operators use to prevent the use of their ATMs in scams.

   d. Each Bitcoin Depot Defendant intentionally chooses not to implement these protocol or procedures because doing so would thwart continued use of the ATMs by scammers, and the Bitcoin Depot Defendants would not collect the substantial revenue they derive from those transactions in the form of usurious markups to the market price of BTC at the time of the transaction.

   e. Plaintiff suffered substantial monetary losses as a direct result of the Bitcoin Depot Defendants intentionally and knowingly failing to take appropriate steps to

prevent, intervene, or mitigate instances in which its ATMs are used by scammers to defraud the elderly and vulnerable in this State and elsewhere.

f. Plaintiff is not alone, as there have been hundreds of reported incidents of Bitcoin Depot ATMs being used by scammers due to the Bitcoin Depot Defendants failing to take appropriate steps to mitigate or stop this issue.

g. Each Bitcoin Depot Defendant's actions and failures to take action are intentional and wilful violations of the S.C. Unfair and Deceptive Trade Practices Act. Accordingly, Plaintiff is entitled to treble damages, attorneys' fees, and reasonable costs.

86. As to Circle K:

a. Circle K is expressly aware that Bitcoin Depot ATMs located in their stores are used as vehicles by scammers to defraud the elderly and vulnerable both in this State and elsewhere.

b. Notwithstanding this fact, Circle K has taken insufficient steps to prevent, intervene, or mitigate those instances in which persons are victimized by scams perpetrated through Bitcoin Depot ATMs located in their stores, because Circle K derives substantial revenue from the use of those ATMs in their stores.

c. Circle K could easily implement additional or different protocols or procedures to prevent those ATMs from being used by scammers, such protocols which other store owners have implemented to prevent the use of Bitcoin ATMs in their stores in scams.

d. Circle K intentionally chooses not to implement these protocol or procedures because doing so would thwart continued use of the ATMs by scammers and/or

the Bitcoin Depot Defendants would discontinue the contract with Circle K to place its ATMs in Circle K stores, and Circle K would not collect the substantial revenue it derives from its relationship with Bitcoin Depot.

e.  Plaintiff suffered substantial monetary losses as a direct result of Circle K's intentionally failing to take appropriate steps to prevent, intervene, or mitigate instances in which persons are victimized by scams perpetrated through Bitcoin Depot ATMs in Circle K's stores in this State and elsewhere.

f.  Plaintiff is not alone, as there have been hundreds of reported incidents of persons being victimized through scams perpetrated through Bitcoin Depot ATMs located in Circle K stores as a result of Circle K's failing to take appropriate steps to mitigate or stop this issue.

g.  Circle K's actions and failures to take action are intentional and wilful violations of the S.C. Unfair and Deceptive Trade Practices Act. Accordingly, Plaintiff is entitled to treble damages, attorneys' fees, and reasonable costs.

### FOR AN EIGHTH CAUSE OF ACTION
**Against Bitcoin Depot and Circle K**
**Public Nuisance**

87. The allegations above are incorporated herewith as if rewritten verbatim.

88. Bitcoin Depot ATMs are a public nuisance, subversive of public order, decency, and morals, because: (i) they are known vehicles for the laundering of illicit funds, the procurement of such funds which contributes to criminal conduct in the community; (ii) they are recognized methods by which criminals engage in transactions for illegal goods and services, including drug sales and trafficking, human trafficking, and prostitution; (iii) they are know methods for facilitating illegal gambling; and (iv) their owners prey upon the unsophistication of users and/or

31

illegal sourcing of users funds by charging an exorbitant and usurious markup on the market price of BTC.

89. The presence of Bitcoin Depot ATMs have had a negative effect on a number of persons in South Carolina and society at large by serving as a vehicle for Cryptocurrency ATM Scams, by permitting the unchecked laundering of illicit funds the procurement of such funds which contribute to criminal conduct in the community, by facilitating the sale of illegal goods and services within the community, and by preying upon unsophisticated users by charging an exorbitant and usurious markup on the market price of BTC.

90. Plaintiff has suffered a special injury distinct from the injuries suffered by the public generally, because Bitcoin Depot ATMs, as designed, manufactured, placed, and maintained by the Bitcoin Depot Defendants and Circle K, facilitated and materially aided in the defrauding of Plaintiff of $30,000.

91. The Bitcoin Depot Defendants and Circle K are liable to Plaintiff for the damages she sustained as a direct and proximate result of the presence and operation of the Bitcoin Depot ATMs at issue in this case.

### FOR A NINTH CAUSE OF ACTION
**Against Circle K**
**Premises Liability**

92. The allegations above are incorporated herewith as if rewritten verbatim.

93. Circle K owns and maintains control over the convenience stores at which the subject Bitcoin Depot ATMs are located.

94. Plaintiff entered the convenience store at the implied invitation of Circle K, who holds the store open to customers, and so Plaintiff is considered an invitee under the law.

32

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

95. Because Plaintiff is considered an invitee, Circle K owed Plaintiff a duty to warn Plaintiff of latent and hidden dangers of which Circle K had or should have had knowledge.

96. Circle K had actual knowledge that the Bitcoin Depot ATMs located on its property are commonly used to perpetuate Cryptocurrency ATM Scams, including against elderly persons such as Plaintiff.

97. It is not obvious upon viewing the Bitcoin Depot ATMs that they are used to perpetuate Cryptocurrency ATM Scams, including scams against elderly persons such as Plaintiff.

98. Plaintiff was in fact the victim of a Cryptocurrency ATM Scam facilitated by two Bitcoin Depot ATMs located in Circle K's stores.

99. As a direct and proximate result of Circle K's failure to take reasonable steps to warn Plaintiff that the Bitcoin Depot ATMs are often used to perpetuate Cryptocurrency ATM Scams, Plaintiff fell victim to a Cryptocurrency ATM Scam at Circle K's stores, and sustained damages as a result.

100. Circle K is liable to Plaintiff for her damages proximately resulting from Circle K's failing to take reasonable steps to warn Plaintiff that the Bitcoin Depot ATMs are often used to perpetuate Cryptocurrency ATM Scams.

101. Circle K's failure to warn Plaintiff of this latent hazard at its stores was a result of an intentional and purposeful act by Circle K not to implement policies and procedures to warn its customers of this hazard. Circle K was not merely negligent in its failure to warn, but consciously made the decision not to warn its customers of thus hazard.

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants as follows:

    a. actual damages and any other actual or consequential pecuniary loss to Plaintiffs that may be determined at trial;

b.   punitive damages;

c.   treble damages, reasonable costs and attorneys' fees;

d.   all costs of court; and

e.   such other relief as the trier of fact deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

PARKER LAW GROUP, LLP

BY: _s/ Derek D. Tarver_
        Lee D. Cope (SC Bar # 14361)
        lcope@parkerlawgroupsc.com
        Derek D. Tarver (SC Bar # 103289)
        dtarver@parkerlawgroupsc.com
        101 Mulberry Street East
        Post Office Box 487
        Hampton, SC 29924
        T: (803) 903-1781
        F: (803) 903-1793

        *and*

        Gibson Solomons, III (SC Bar #68291)
        gsolomons@speightsandsolomons.com
        SPEIGHTS & SOLOMONS, LLC
        100 Oak Street East
        Post Office Box 685
        Hampton, South Carolina 29924
        T: (803) 943-4444
        F: (803) 943-4599

March 8, 2024.                    ATTORNEYS FOR PLAINTIFF
Hampton, South Carolina

ELECTRONICALLY FILED - 2024 Mar 08 4:14 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4001549

# AFFIDAVIT OF SERVICE

**State of South Carolina**          **County of Richland**          **Common Pleas Court**

Glenda J. Mooneyham, et al, Plaintiff(s)

vs.

Bitcoin Depot, Inc., et al, Defendant(s)          **Case No:  2024CP4001549**

For:

PARKER LAW GROUP
PO Box 487
Hampton, SC  29924

To be served on:          Bitcoin Depot Operating, LLC

Lester L. Franzen                    , undersigned, being duly sworn, deposes and says:

that on    March 11, 2024  at 12:25 pm          at  508 Meeting St., West Columbia, SC

the undersigned served the documents described as:

**Class Action Summons, Class Action Complaint**

A true and correct copy of the aforesaid document(s) was served on:
**Bitcoin Depot Operating, LLC**

By delivering them into the hands of an officer or managing agent whose name and title is
Julie Bonk, Authorized Representative

The person receiving documents is described as follows:

| Sex | F | ; Race | White | ; Hair Color | | Black | ; Facial Hair | N/A |
| Approx. Age | | 30 | ; Approx. Height | | 5'06" | ; Approx. Weight | | 160 |

☑ To the best of my knowledge and belief, said defendant was not engaged in the US Military at the time of service.

Subscribed and sworn to before me this          I certify that I am over the age of 18, have no interest in the above action.
    | |   day of   **March, 2024**                Undersigned declares under penalty of perjury that the foregoing is true and correct.

NOTARY PUBLIC                    Lester L. Franzen          SPP File:      **139342-1**

My Commission Expires: 10-30-2033          **Process Server**
                    **Southern Pride Process, LLC**      Client File:    **Mooneyham v.**
                    **(803) 386-8559**                      **Bitcoin**
                    **P.O. Box 7125**
                    **Columbia, SC  29202-7125**

