**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
Civil Action No. 3:24-cv-01774-SAL**

| |
|---|
| **Glenda J. Mooneyham, on behalf of herself and all others similarly situated,** <br><br> **Plaintiff,** <br><br> v. <br><br> **Bitcoin Depot, Inc.; Bitcoin Depot Operating, LLC (d/b/a Bitcoin Depot); Circle K Stores Inc.,** <br><br> **Defendants.** |

**MEMORDANUM OF DEFENDANT CIRCLE K STORES INC. IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO STAY OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS AND TO DISMISS**

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................ 1

II. Factual Allegations ............................................................................................................ 2

III. Discussion .......................................................................................................................... 4

 A. While engaging in the two Bitcoin transactions that form the basis for her claims, Mooneyham agreed to an arbitration provision that requires her to arbitrate all of her claims against Circle K. ............................................................. 4

 1. The FAA requires arbitration of this dispute. ................................................ 5

 2. The arbitration agreement that Mooneyham signed is valid and binding. ........................................................................................................ 5

 3. The dispute between Mooneyham and Circle K falls within the scope of the arbitration clause. ................................................................................ 6

 B. In the alternative, this Court should strike Mooneyham's class allegations supporting her SCUPTA and public nuisance claims and dismiss her individual public nuisance claim against Circle K. ............................................... 7

 1. Standard of Review ....................................................................................... 7

 2. Mooneyham waived her ability to bring, join, or participate in a class action lawsuit. ............................................................................................... 8

 3. Separately and independently, claims under SCUTPA cannot be asserted on a class-wide or representative basis. ......................................... 9

 4. Mooneyham's individual and class-wide public nuisance claims fail because her alleged damages are not "special," as required by law. .......... 9

 5. Separately and independently, a public nuisance cannot be based on the misuse of a lawful device. ................................................................... 12

IV. Conclusion ....................................................................................................................... 12

Defendant Circle K Stores Inc. ("Circle K") submits this Memorandum in Support of its Motion to Compel Arbitration and to Stay or, in the Alternative, to Strike Class Allegations and to Dismiss claims that Plaintiff Glenda J. Mooneyham ("Mooneyham") asserts in this action.[1]

## I.     INTRODUCTION

Mooneyham contends that she was the victim of a mystery scammer who tricked her—twice—into sending the scammer $15,000 using a cryptocurrency kiosk the Bitcoin Depot Defendants supplied, which was located in one of Circle K's Lexington, South Carolina stores. Before engaging in those two transactions, however, Mooneyham entered into an account agreement with Bitcoin Depot that expressly required her to arbitrate any claims arising from Bitcoin Depot's kiosks. Indeed, that agreement compelled the arbitration of claims not only against Bitcoin Depot, but also claims against Bitcoin Depot's marketing partners like Circle K. Accordingly, Mooneyham should be compelled to arbitrate all of her claims, and this action should be stayed pending the outcome of the arbitration.

Alternatively, this Court should strike Mooneyham's class-wide allegations made in support of her claims because Mooneyham agreed in the same account agreement that she would not "bring, join or participate in any class action lawsuit as to any claim, dispute or controversy" against Bitcoin Depot or its marketing partners. Further, Mooneyham asserts a claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") and for public nuisance. But SCUTPA expressly prohibits the assertion of claims on a representative or class-wide basis. And all of the harms Mooneyham alleges in support of her public nuisance claim—both individually and as a

---

[1]     Circle K requests to join in the Bitcoin Depot Defendants' Motion to Compel Arbitration and Stay Action or in the Alternative to Dismiss and Strike Class Allegations. To the extent that the arguments presented therein also apply to Circle K, they are adopted and incorporated herein by reference.

putative class member—are harms to society as a whole, not special harms to Mooneyham or the members of her asserted class. Because South Carolina demands proof of a *special,* non-public harm supporting a privately-asserted public nuisance claim, Mooneyham's public nuisance claim should be dismissed and her class allegations regarding that claim should be stricken.

## II.     FACTUAL ALLEGATIONS[2]

Circle K operates convenience stores and gas stations across the United States, including in South Carolina. Compl. ¶¶ 6-7. Defendants Bitcoin Depot, Inc. and Bitcoin Depot Operating, LLC (collectively, "Bitcoin Depot") distribute kiosks that allow users to purchase fractional shares of Bitcoin—a form of cryptocurrency. *Id.* ¶ 15. In 2021, Bitcoin Depot and Circle K announced an agreement under which Bitcoin Depot would place its cryptocurrency kiosks in Circle K stores. *Id.* ¶¶ 16.

To purchase Bitcoin from a kiosk located in a Circle K store, a Bitcoin Depot customer must first agree to Bitcoin Depot's Terms and Conditions (the "Bitcoin Depot T&Cs"). Buchanan Decl. ¶¶ 7(d), 8.[3] The Bitcoin Depot T&Cs include the following arbitration and class action waiver provisions:

> The parties hereby agree to arbitrate all claims that may arise under the Agreement. Without limiting the foregoing, should a dispute arise between the parties (including the Covered Parties) including, without limitation, any matter concerning the Bitcoin Depot Offerings, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association ("AAA") in Atlanta, GA, in accordance with the then current Commercial Arbitration rules of the AAA[.]

---

[2] As it must when submitting a motion under Rule 12 of the Federal Rules of Civil Procedure, Circle K does not contest the truth of Mooneyham's allegations at this stage of this action. It reserves its right to do so as litigation proceeds.

[3] "Buchanan Decl." refers to the Declaration of Scott Buchanan filed by Bitcoin Depot in support of its Motion to Compel Arbitration and Stay Action or in the Alternative to Dismiss and Strike Class Allegations, which Circle K incorporates by reference in support of its own Motion.

> To the extent permitted by law, you agree that you will not bring, join or participate in any class action lawsuit as to any claim, dispute or controversy that you may have against the Covered Parties and/or their respective employees, officers, directors, members, representative and/or assigns. You agree to the entry of injunctive relief to stop such a lawsuit or to remove you as a participant in the suit.

Bitcoin Depot T&Cs § 17.1.[4]  The term "Covered Parties," as used in the Bitcoin Depot T&Cs, is defined elsewhere to mean "Bitcoin Depot, as well as its parent, subsidiaries, related parties, third-party service providers and marketing partners (collectively, 'Covered Parties'), who are express third-party beneficiaries of the mandatory arbitration provision." *Id.* at p.1.  As a party that permitted Bitcoin Depot to place its kiosks in Circle K stores, Circle K is one of Bitcoin Depot's "marketing partners," as that term is used in the Bitcoin Depot T&Cs.  Buchanan Decl. ¶ 5; O'Toole Decl. ¶ 4.[5]

Once a customer has agreed to the Bitcoin Depot T&Cs, she may purchase Bitcoin from a Bitcoin Depot kiosk, some of which are in Circle K stores, by visiting the kiosk and depositing cash into it—up to a maximum of $15,000.  Compl. ¶¶ 17, 35.

Mooneyham alleges that she was the victim of a scam involving a Bitcoin Depot kiosk in a Circle K store in Lexington, South Carolina.  *Id.* ¶¶ 31-39.  On November 15, 2023, Mooneyham claims she received a phone call in which a scammer falsely told her that her bank account had been compromised.  *Id.* ¶ 32.  Based on the scammer's instructions, Mooneyham withdrew $15,000 from her bank account and took it to a Circle K store in Lexington that contained a Bitcoin Depot kiosk.  *Id.* ¶¶ 33-34.  After agreeing to the Bitcoin Depot T&Cs (including the arbitration and class action waiver provisions), Buchanan Decl. ¶ 8, Mooneyham deposited her money into the kiosk and held up her phone to the machine so that the kiosk could scan a QR code the scammer provided.

---

[4]    The Bitcoin Depot T&Cs are attached as Exhibit A to the Buchanan Decl.

[5]    "O'Toole Decl." refers to the Declaration of David O'Toole filed by Circle K in support of its Motion.  The O'Toole Declaration is attached as **Exhibit A** to this Memorandum.

Compl. ¶¶ 34-35. Mooneyham alleges that the Bitcoin she purchased was then sent to the scammer's digital wallet. *Id.* ¶ 37. At the direction of the scammer, Mooneyham completed an identical transaction at the same Circle K store two days later. *Id.* ¶¶ 38-42.

Mooneyham's Complaint seeks the recovery of not only the $30,000 she allegedly lost to a scammer, but class-wide relief on behalf of:

> All persons who have suffered damages as a result of the dangers created and/or enabled and [sic] the Defendants' lack of due care in attending to this know [sic] behavior associated with Bitcoin ATM machines, particularly the use of Bitcoin ATM machines in predatory scams against the elderly.

*Id.* ¶ 46. Mooneyham claims that there are hundreds of class members who fall within this definition. *Id.* ¶¶ 49, 54.

Of the nine claims in Mooneyham's Complaint, she asserts three against Circle K: (1) a violation of SCUTPA, *id.* ¶¶ 84-86; (2) a common law claim of public nuisance, *id.* ¶¶ 87-91; and (3) a common law claim of premises liability, *id.* ¶¶ 92-101.

### III.     DISCUSSION

**A.     While engaging in the two Bitcoin transactions that form the basis for her claims, Mooneyham agreed to an arbitration provision that requires her to arbitrate all of her claims against Circle K.**

The public policy of the United States and of the State of South Carolina strongly favor arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."); *Trident Tech. Coll. v. Luca & Stubbs, Ltd.,* 286 S.C. 98, 103, 333 S.E.2d 781, 785 (1985) (explaining that federal "policy favoring the arbitration of disputes is also well established in South Carolina"). That policy and well-established authority demand that Mooneyham arbitrate all of her claims against Circle K. The Federal Arbitration Act (the "FAA") governs the issues here because the Bitcoin transactions at

- 4 -

the heart of Plaintiff's complaint involve interstate commerce, as defined in 9 U.S.C. § 1.[6]

### 1. The FAA requires arbitration of this dispute.

The FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract . . . .

9 U.S.C § 2. In considering a motion to compel arbitration, the trial court should determine (1) the validity of the contract to arbitrate, and (2) whether the subject matter of the arbitration agreement covers the matter in dispute. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651, 106 S. Ct. 1415, 1420 (1986). If a valid arbitration agreement covers the existing dispute, Section 4 of the FAA requires that arbitration be compelled. *Dean Witter Reynolds, Inv. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985).

### 2. The arbitration agreement that Mooneyham signed is valid and binding.

Mooneyham agreed to the Bitcoin Depot T&Cs before completing each transaction at issue. Buchanan Decl. ¶ 8. Specifically, the Bitcoin Depot kiosk displayed a prompt that contained a disclaimer and the Bitcoin Depot T&Cs, and Mooneyham had to select "I accept these terms and conditions" before continuing with her transaction. Buchanan Decl. ¶¶ 7(d), 8. This type of "clickwrap" agreement is valid and binding. *See, e.g., Rock v. Solar Rating & Certification Corp.*, No. 8:17-CV-3401-DCC-JDA, 2018 WL 3750617, at *5 (D.S.C. July 23, 2018), *report and recommendation adopted*, No. 8:17-CV-3401-DCC, 2018 WL 3745057 (D.S.C. Aug. 7, 2018). Thus, Mooneyham agreed—twice—to arbitrate all claims that may arise under the Bitcoin Depot

---

[6] Mooneyham is a resident of South Carolina, Compl. ¶ 1; the "Bitcoin Depot Defendants" are residents of Delaware and Georgia, *id.* ¶¶ 2-4; and Circle K is a resident of Texas, with its principal place of business in Arizona, *id.* ¶ 6.

T&Cs, which includes all of her claims against Circle K in this action.

### 3. The dispute between Mooneyham and Circle K falls within the scope of the arbitration clause.

The FAA "reflects a strong federal preference toward enforcing arbitration agreements." *Reese v. Commercial Credit Corp.*, 955 F. Supp. 567, 569 (D.S.C 1997) (citing *Moses H. Cone*, 460 U.S. at 24, 103 S. Ct. at 941 (1983)). Accordingly, courts liberally enforce arbitration provisions, construing those provisions in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998); *see also S.C. Public Serv. Auth. v. Great W. Coal (Kentucky), Inc.*, 312 S.C. 559, 564, 437 S.E.2d 22, 25 (1993) ("[U]nless the court can say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute, arbitration should be ordered.").

While completing the Bitcoin transactions that form the basis for her claims, Mooneyham expressly agreed to arbitrate "any matter concerning the Bitcoin Depot Offerings." Bitcoin Depot T&Cs § 17.1. All of Mooneyham's claims, which arise out of her alleged use of a Bitcoin Depot cryptocurrency kiosk, concern a "Bitcoin Depot Offering."[7] Moreover, Mooneyham agreed to arbitrate not only her disputes with Bitcoin Depot, but also her disputes with any "Covered Parties" over Bitcoin Depot Offerings. *Id*. As noted above, "Covered Parties" is defined in the account agreement between Bitcoin Depot and Mooneyham to include Bitcoin Depot's "marketing partners," *id.* at p.1, a term that includes Circle K. Buchanan Decl. ¶ 5; O'Toole Decl. ¶ 4. Even Mooneyham acknowledges that Bitcoin Depot and Circle K entered into a "strategic partnership"

---

[7] The Bitcoin Depot T&Cs define "Bitcoin Depot Offerings" to include, among other things, "Bitcoin Depot Venues." Bitcoin Depot T&Cs at p. 2. "Bitcoin Depot Venues," in turn, are defined to include Bitcoin Depot kiosks like the one allegedly used by Mooneyham. *Id*.

to market and distribute access to Bitcoin by making Bitcoin Depot's kiosks available in Circle K stores. Compl. ¶¶ 16-18. Because Circle K is a marketing partner and thus a Covered Party, the Court should compel arbitration of all of her claims in this action against Circle K.

> **B.     In the alternative, this Court should strike Mooneyham's class allegations supporting her SCUPTA and public nuisance claims and dismiss her individual public nuisance claim against Circle K.**

### 1.     Standard of Review

A Rule 12(f) motion to strike class allegations asks a court to terminate the class-wide features of a lawsuit based on what is alleged in the complaint. *Cnty. of Dorchester, S.C. v. AT & T Corp.*, 407 F. Supp. 3d 561, 565 (D.S.C. 2019). Although motions to strike are generally disfavored, the purpose of Rule 12(f) is to "promote judicial efficiency and avoid needless expenditure of time and money." *Gibson v. Confie Ins. Grp. Holdings, Inc.*, No. 2:16-CV-02872-DCN, 2017 WL 2936219, at *12 (D.S.C. July 10, 2017) (citing *Billips v. NC Benco Steel, Inc.*, No. 5:10-CV-95-V, 2011 WL 4829401, at *1 (W.D.N.C. Oct. 12, 2011)). A court may grant a motion to strike class allegations where "the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." *Cnty. of Dorchester, S.C.*, 407 F. Supp. 3d at 565-66 (citing *Waters v. Electrolux Home Prod., Inc.*, No. 5:13-cv-151, 2016 WL 3926431, at *4 (N.D.W. Va. July 18, 2016)).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). The court need not, however, accept the plaintiff's legal conclusions. *Id.* And a "party advancing a claim must include more than mere conclusory statements in support of a claim." *Tarry v. Captain George's of S.C., LP*, No. 4:19-

CV-800, 2020 WL 12787708, at *2 (D.S.C. Sept. 21, 2020) (citations omitted). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." *Iqbal*, 556 U.S. at 679.

### 2. Mooneyham waived her ability to bring, join, or participate in a class action lawsuit.

As noted in Section II, *supra,* the Bitcoin Depot T&Cs that Mooneyham agreed to included a class action waiver by which Mooneyham promised not to "bring, join or participate in any class action lawsuit as to any claim, dispute or controversy that you may have against the Covered Parties and/or their respective employees, officers, directors, members, representative and/or assigns." Bitcoin Depot T&Cs § 17.1. The waiver also confirmed Mooneyham's agreement "to the entry of injunctive relief to stop such a lawsuit or to remove you as a participant in the suit." *Id.* This waiver bars all of the claims that Mooneyham attempts to assert on a representative or class-wide basis, and those claims must be dismissed.

Valid agreements by parties to waive their ability to pursue or participate in a class action are generally enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1746 (2011). Indeed, a recent line of Supreme Court cases has enforced such waivers, rejecting arguments that they conflicted with state or federal law. *See id.* (holding that the FAA preempted a California law declaring class action waivers unconscionable); *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201 (2012) (reversing a West Virginia Supreme Court decision that invalidated a class action waiver on public policy grounds); *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 133 S. Ct. 2304 (2013) (holding that federal antitrust laws do not reflect any intention to preclude class action waivers).

The same effect must be given to the class action waiver Mooneyham agreed to. By attempting to assert claims on behalf of a putative class, Mooneyham has violated her promise not

to "bring, join or participate in any class action lawsuit" against the Defendants. Accordingly, this Court should strike all of Mooneyham's class allegations and dismiss all claims that she attempts to assert on behalf of a putative class.

### 3. Separately and independently, claims under SCUTPA cannot be asserted on a class-wide or representative basis.

Although S.C. Code Ann. § 39-5-140(a) allows a plaintiff to "bring an action individually" for violation of SCUTPA, the statute expressly bars a party from bringing such a claim "in a representative capacity." The South Carolina Supreme Court has affirmed this plain language which "prohibits class action suits." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 119, 678 S.E.2d 430, 432 (2009). The Supreme Court's holding in *Dema* has been heeded by "various courts." *Fejzulai v. Sam's W., Inc.*, 205 F.Supp.3d 723, 725 (D.S.C. 2016) (collecting cases). In fact, fewer than two years ago, this Court held that SCUTPA "clearly prohibits Plaintiff from bringing her claim in a representative capacity." *Gaillard v. Capital One Auto Fin.*, No. 3:21-CV-2228-SAL, 2022 WL 18495862, at *12 (D.S.C. Sept. 29, 2022).

These authorities are unequivocal, and no amount of discovery can alter their command: Mooneyham's claim under SCUPTA cannot proceed in a representative capacity, and her class allegations supporting that claim must be stricken.

### 4. Mooneyham's individual and class-wide public nuisance claims fail because her alleged damages are not "special," as required by law.

Mooneyham asserts, as her Eighth Cause of Action against Defendants, and on a class-wide basis, a tort of public nuisance. Compl. ¶¶ 87-91. The tort of nuisance is defined as "anything which essentially interferes with the enjoyment of life or property." *Neal v. Darby*, 282 S.C. 277, 285, 318 S.E.2d 18, 23 (Ct. App. 1984) (citing *Strong v. Winn-Dixie Stores, Inc.*, 240 S.C. 244, 125 S.E.2d 628 (1962)). A nuisance becomes a *public* nuisance when it creates a danger to the public rather than just an individual. *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81,

382 S.E.2d 463, 469 (Ct. App. 1989). But "[n]othing is a public nuisance which the law itself authorizes." *Id.* (citing *Law v. Spartanburg*, 148 S.C. 229, 229, 146 S.E. 12, 14 (1928)).

Because public nuisance claims focus on harm to the public, a private citizen typically cannot bring a lawsuit to abate a public nuisance, but must rely upon the State to do so. *Johnston v. Anderson Reg'l Landfill, LLC*, No. 8:23-CV-01417-JDA, 2024 WL 1287202, at *4 (D.S.C. Mar. 26, 2024) (citing *Huggin v. Gaffney Dev. Co.*, 229 S.C. 340, 92 S.E.2d 883, 884 (1956)). A "narrow exception" to the prohibition of public nuisance claims by a private citizen exists only if the citizen alleges "direct and special damages resulting to him." *Id.* at *4 (quoting *Huggin*, 229 S.C. at 340, 92 S.E.2d at 884). "Special" damages are those that are specific to the individual plaintiff—in addition to, or different from, that which the public has suffered. *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 78, 753 S.E.2d 846, 852 (2014).

This Court's opinion in *Johnston* illuminates the boundaries of the "narrow exception" to the general bar against the private pursuit of public nuisance claims. There, a group of landowners sued a nearby landfill claiming its release of odors and waste seeped onto their property. *Johnston*, 2024 WL 1287202, at *1. This Court granted the landfill's motion to dismiss because the plaintiffs had not "sufficiently pled an injury to their real or personal property that is different in kind from that suffered by the entire community." *Id.* at *4. In fact, as this Court noted, most of the language in the plaintiffs' complaint focused on the harm to the public, rather than to the individual plaintiffs. *Id.* at *4. Thus, even though the plaintiffs' land was near the landfill, the damages they alleged were "at most different in degree from the rest of the community, not different in kind." *Id.* at *5. That difference in degree was not enough to allow the plaintiffs privately to assert a public nuisance claim. *Id.* at *5.

Here, Mooneyham alleges that Bitcoin Depot kiosks cause the following harms to "society at large": (1) serving as a vehicle for cryptocurrency ATM scams, (2) permitting the unchecked laundering of illicit funds used for criminal conduct, (3) facilitating the sale of illegal goods and services, and (4) preying upon unsophisticated users by charging a markup on the market price of Bitcoin. Compl. ¶¶ 88-89. These are, by their very nature, harms posed to the public, not threats to Mooneyham individually. Like the plaintiffs in *Johnston,* then, the damages that Mooneyham allegedly suffered because of the alleged public harms Bitcoin Depot's kiosks created reflect a difference in the *degree* of harm, not in the *nature* of that harm. Accordingly, Mooneyham's attempt to assert a public nuisance claim should be rejected.

Likewise, Mooneyham's class definition alleges harms that are societal—not individual: "damages as a result of the dangers created and/or enabled and [sic] the Defendants' lack of due care in attending to this know [sic] behavior associated with Bitcoin ATM machines, particularly the use of Bitcoin ATM machines in predatory scams against the elderly." Compl. ¶ 46. This definition embraces and enfolds class members who suffer all of the harms suffered by society as a whole. Because the class's damages are not "special," either, Mooneyham's class allegations supporting her public nuisance claim should be dismissed.

Dismissal is fortified by Mooneyham's sweeping allegations about the size and scale of the Defendants' purported wrongdoing. She contends for example, that the harms posed by Bitcoin Depot ATMs affect "hundreds of Class members" and account "for millions of dollars in losses to SC residents in the past 3 years." Compl. ¶¶ 49, 54. If the purported class is of the size and scale that Mooneyham alleges, only the State can pursue a remedy for the alleged harm the public nuisance has caused.

**5.    Separately and independently, a public nuisance cannot be based on the misuse of a lawful device.**

Mooneyham's public nuisance claim suffers from an additional—and independent—fatal defect: neither Bitcoin Depot's kiosks nor Circle K stores are instrumentalities that are inherently harmful (such as inherently malodorous landfills or pig farms), but are harmful only when, according to Mooneyham, they are misused. In analogous public cases involving the misuse of firearms, courts have generally held that the manufacture and placement into the stream of commerce of legal goods that can be misused is not a public nuisance. *See, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 374-75, 821 N.E.2d 1099, 1116 (2004) ("[W]e are reluctant to state that there is a public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another."); *In re Firearm Cases*, 126 Cal. App. 4th 959, 989, 24 Cal. Rptr. 3d 659, 680 (2005) ("In this case, there is no causal connection between any conduct of the defendants and any incident of illegal acquisition of firearms or criminal acts or accidental injury by a firearm. Defendants manufacture guns according to federal law and guidelines."). Such holdings are fully consistent with the well-established law of South Carolina, which holds that an act is not a public nuisance when the law authorizes that act. *Home Sales*, *supra,* 299 S.C. at 81, 382 S.E.2d at 469. Accordingly, because Bitcoin Depot's kiosks and Circle K stores that are the basis of Mooneyham's complaint are not *inherently* harmful, her public nuisance claim should be dismissed.

### IV.    CONCLUSION

For the foregoing reasons, this Court should compel Mooneyham to arbitrate all of her claims against Circle K and should stay this action pending the outcome of that arbitration.

Alternatively, this Court should strike Mooneyham's class allegations in support each of her claims against Circle K and should dismiss her individual public nuisance claim.

This 3rd day of June, 2024.

*/s/ Amanda Pickens Nitto*
Stephen M. Cox
Federal I.D. No. 6913
scox@robinsonbradshaw.com

Amanda Pickens Nitto
Federal I.D. No. 12620
anitto@robinsonbradshaw.com

Benjamin C. DeCelle
Federal I.D. No. 12995
bdecelle@robinsonbradshaw.com

ROBINSON BRADSHAW & HINSON, P.A.
202 E. Main St., Ste. 201
Rock Hill, South Carolina 29730
Telephone:    803.325.2900
Facsimile:    803.325.2929

*Attorneys for Defendant Circle K Stores Inc.*