IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
Civil Action No. 3:24-cv-01774-SAL

| | |
|---|---|
| Glenda J. Mooneyham, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>Bitcoin Depot, Inc.; Bitcoin Depot Operating, LLC (d/b/a Bitcoin Depot); Circle K Stores Inc.,<br><br>    Defendants. | |

**CIRCLE K STORES INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS AND TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. DISCUSSION .......................................................................................................2

    A. Because Mooneyham agreed to the Bitcoin Depot T&Cs, her claim must be arbitrated individually. ...........................................................2

        1. Because a third party caused Mooneyham's alleged duress without Bitcoin Depot's or Circle K's knowledge, the Bitcoin Depot T&Cs are not voidable. ..................................................3

        2. Issue preclusion does not apply. ................................................5

        3. The Bitcoin Depot T&Cs are not unenforceable merely because it is an adhesion contract. ............................................................8

    B. The public nuisance claim cannot be pursued on an indivual or class-wide basis. .............................................................................................10

        1. Neither Mooneyham nor the proposed class have suffered special damages. ......................................................................11

        2. South Carolina law does not recognize public nuisance claims based on the unlawful misuse of a lawful product. ...................12

III. CONCLUSION ..................................................................................................15

Defendant Circle K Stores Inc. ("Circle K") submits this Reply in Support of its Motion to Compel Arbitration and to Stay or, in the Alternative, to Strike Class Allegations and to Dismiss claims that Plaintiff Glenda J. Mooneyham ("Mooneyham") asserts in this action.[1]

## I. INTRODUCTION

Mooneyham twice agreed that she would not bring a class action and that she would arbitrate her claims against Bitcoin Depot[2] and Circle K. Buchanan Decl.[3] ¶¶ 6-8. Before agreeing to these terms, Mooneyham accepted multiple prompts warning her about possible scams. *Id.* ¶¶ 7-12. Mooneyham does not dispute these facts, but instead seeks to avoid arbitration by claiming that she was under duress at the time. ECF No. 25 at 10-14.

But the contract defense of duress will not save Mooneyham's claims. A contract is voidable for duress only when (a) the duress was caused by a party to the contract, or (b) the other contracting party acted in bad faith and with reason to know of duress caused by a third party. A scammer caused Mooneyham's alleged duress, not Circle K or Bitcoin Depot. And she cannot plausibly contend that Circle K or Bitcoin Depot acted in bad faith with reason to know of her alleged duress when she bypassed many alerts warning her to stop and that she may be the victim of a scam. The Defendants *warned* Mooneyham of the potential scam, which is the opposite of acting in bad faith. Her duress argument fails and this case should be stayed and compelled to arbitration.

---

[1]  To the extent the arguments in the Bitcoin Depot Defendants' Reply in Support of their Motion apply to Circle K, they are adopted and incorporated herein by reference.

[2]  "Bitcoin Depot" collectively refers to Defendants Bitcoin Depot, Inc. and Bitcoin Depot Operating, LLC (d/b/a Bitcoin Depot).

[3]  "Buchanan Decl." refers to the Declaration of Scott Buchanan. ECF No. 12-1.

In the alternative, Mooneyham's class allegations should be struck. Mooneyham contends that some form of unconscionability and/or other "context" prohibits this Court from enforcing her express contractual promise that she would not bring a class action against Bitcoin Depot or Circle K. But United States Supreme Court overruled the cases Mooneyham cites in *AT&T Mobility LLC v. Concepcion*, which numerous jurisdictions have applied to preempt state laws that would invalidate class action waivers.

Finally, Mooneyham's novel public nuisance claim against Circle K is, as the name implies, nothing more than a general assertion that the Bitcoin Depot kiosks are harmful to the public. Indeed, Mooneyham expressly contends that the Bitcoin Depot kiosks "have had a negative effect on a number of persons in South Carolina and society at large by serving as a vehicle for Cryptocurrency ATM Scams." ECF No. 1-1 ¶ 89. Because Mooneyham's alleged damages arose out of the "Cryptocurrency ATM Scams" that she claims harm the public, she has not pled the "special" damages required for a private citizen to assert a public nuisance claim.

Mooneyham's circumstances, while unfortunate, do not permit her to avoid her contractual promises and invent claims that do not exist under South Carolina law. Accordingly, Circle K respectfully requests that this Court compel arbitration or, in the alternative, strike Mooneyham's class allegations and dismiss her public nuisance claim.[4]

## II. DISCUSSION

**A. Because Mooneyham agreed to the Bitcoin Depot T&Cs, her claim must be arbitrated individually.**

Mooneyham does not contest that she agreed to the Bitcoin Depot Terms and Conditions (the "Bitcoin Depot T&Cs") before her two transactions or that those terms apply to Circle K.

---

[4] Mooneyham concedes that she is unable to pursue her SCUTPA claim on a class-wide basis. ECF No. 25 at 21-22. Accordingly, the class-wide SCUTPA claim should be dismissed.

Instead, to avoid arbitration, Mooneyham argues that she agreed to the Bitcoin Depot T&Cs under duress. But a scammer caused Mooneyham's alleged duress—not Bitcoin Depot or Circle K. Because neither Bitcoin Depot nor Circle K acted in bad faith with reason to know of her duress, the Bitcoin Depot T&Cs are not voidable.

Mooneyham's other attempts to avoid arbitration—asserting that an Iowa state court decision not involving Circle K precludes Circle K's arguments in this case, or that the Bitcoin Depot T&Cs are an unconscionable adhesion contract—also fall flat. The Bitcoin Depot T&Cs are enforceable and Mooneyham should be compelled to arbitrate her claims individually.

### 1. Because a third party caused Mooneyham's alleged duress without Bitcoin Depot's or Circle K's knowledge, the Bitcoin Depot T&Cs are not voidable.

A party seeking to void a contract for duress must prove three elements: (1) she was coerced to enter the contract; (2) her fear left her bereft of the quality of mind essential to the making of the contract; and (3) the contract was obtained a result of her state of mind. *Gainey v. Gainey*, 382 S.C. 414, 428, 675 S.E.2d 792, 799 (Ct. App. 2009). A contract is voidable for duress only if the threats leave the victim with "no reasonable alternative." *Holler v. Holler*, 364 S.C. 256, 267, 612 S.E.2d 469, 475 (Ct. App. 2005).

Although South Carolina courts have not yet addressed this issue, the identity of the person or entity causing the duress is essential. Other courts have taken two approaches where, as here, a party seeks to void a contract because of duress caused by a third party. The Bitcoin Depot T&Cs are not voidable under either approach.

Some jurisdictions hold that the contract is only voidable when the duress was caused by one of the contracting parties. *See, e.g.*, *AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 687 (Fla. Dist. Ct. App. 2015) ("[A] contract may not be set aside on the basis of duress or coercion unless the improper influence emanated from one of the contracting parties—the actions of a third

3

party will not suffice.") (internal quotations and citation omitted); *Hopkins v. New Day Fin.*, 643 F. Supp. 2d 704, 715 (E.D. Pa. 2009) ("Moreover, economic duress is present only if the defendant brings about the state of financial distress in which plaintiffs find themselves at the time of signing.") (internal quotations and citation omitted). Because a scammer caused Mooneyham's alleged duress and not a contracting party (Bitcoin Depot or Circle K), her argument fails under this approach. This is a straight-forward, simple answer.

Other jurisdictions have adopted the "Restatement approach," which is based on Section 175(2) of the Second Restatement of Contracts.[5] That section states that duress caused by third parties can render a contract voidable only when the other party to the contract acts in bad faith and has reason to know of the duress. Restatement (Second) of Contracts § 175(2) (1981); *see also Emp'rs Ins. Of Wausau v. Bond*, No. HAR-90-1139, 1991 WL 8431, at *2 (D. Md. Jan. 25, 1991) ("However, where the assent was induced by a third-party unrelated to the transaction and the opposing party to the transaction, without knowledge of the victim's duress, materially relied upon the victim's assent, the contract is not voidable.").

Here, both Bitcoin Depot and Circle K acted in good faith and did not have reason to know of Mooneyham's duress. Mooneyham points to steps that Bitcoin Depot has taken to protect its customers from fraud and other scams as evidence of its knowledge of her duress. ECF No. 25 at 12-13. If Mooneyham's argument was valid, companies such as Bitcoin Depot and Circle K would be put in an impossible situation: either face potential liability for issuing warnings to your customers, or face potential liability for not issuing warnings to your customers. Instead, the

---

[5] Although Mooneyham concedes that "section 175(2) of the Restatement has not been explicitly adopted in South Carolina" she states that it "has been cited with approval by the South Carolina Court of Appeals and this Court." ECF No. 25 at 11, n. 5 (citing *Blejski v. Blejski*, 325 S.C. 491, 498, 480 S.E.2d 462, 466 (Ct. App. 1997)). *Blejski*, however, does not cite Section 175(2) directly, but instead cites Section 175's comments.

multiple warnings and prompts that Mooneyham chose to ignore are direct evidence that Bitcoin Depot and Circle K acted in good faith. Because Bitcoin Depot and Circle K acted in good faith without reason to know of the alleged duress, the Bitcoin Depot T&Cs are not voidable.

### 2. Issue preclusion does not apply.

Mooneyham contends that an Iowa state court ruling involving different parties, different facts, different law, and different issues precludes this Court from enforcing an arbitration agreement that Mooneyham twice agreed to before engaging in the transactions that form the basis of her claims. Such an argument reflects a fundamental misunderstanding of issue preclusion.

Issue preclusion is intended to prevent a party from relitigating issues previously raised and resolved. *Lucky Brand Dungarees, Inc. v. Marcel Fashion Grp., Inc.*, 590 U.S. 405, 411, 140 S.Ct. 1589, 1594 (2020). "Issue preclusion serves a dual purpose: to protect litigants from the vexation of relitigating identical issues with identical parties and to further the interest of judicial economy and efficiency by preventing unnecessary litigation." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571-72 (Iowa 2006) (cleaned up). To invoke issue preclusion under Iowa law,[6] the issue must: (1) be identical in the two cases, (2) have been raised and litigated in the prior action, (3) be material and relevant to the disposition of the prior case, and (4) be essential to the resulting judgment. *Lemartec Eng'g & Constr. v. Advance Conveying Techs., LLC,* 940 N.W.2d 775, 779 (Iowa 2020) (quoting *Fischer v. City of Sioux City*, 654 N.W.2d 544, 547 (Iowa 2002)).

---

[6] Mooneyham argues—and Circle K agrees—that the Court should look to Iowa law to determine this issue. *See* ECF No. 25 at 15-16. However, South Carolina law is substantially the same with respect to issue preclusion. *See, e.g.*, *Carolina Renewal, Inc. v. S.C. Dep't. Transp.*, 385 S.C. 550, 554, 684 S.E.2d 779, 782 (Ct. App. 2009) ("The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment.").

On the first element, for issues to be "identical," the same facts and legal standards must be used to resolve them. *Cornell v. State*, 529 N.W.2d 606, 610 (Iowa 1994). "Similarity of issues is not sufficient; the issue must be 'precisely the same.'" *Est. of Leonard, ex rel., Palmer v. Swift*, 656 N.W.2d 132, 147 (Iowa 2003) (quoting *Westegard v. Davis Cnty. Cmty. Sch. Dist.*, 580 N.W.2d 726, 728 (Iowa 1998)). It takes only a rudimentary read of the order from the Iowa District Court in Linn County to determine these two cases are far from "identical." To begin, the Iowa case involved a dispute between Bitcoin Depot Operating, LLC and an individual named Shelby Cason concerning the rightful owner of $14,800 that Cason deposited into a Bitcoin Depot kiosk and that the Linn County Sheriff's Office recovered. ECF No. 25-3 at 1. Unlike Cason, Mooneyham is not seeking to recover from a local sheriff's office the money she deposited into a kiosk. Rather, she is seeking to impose novel, unsupported legal responsibilities on a store owner that housed a kiosk. None of the legal claims asserted in this case against Circle K—South Carolina Unfair and Deceptive Trade Practices, public nuisance, and premises liability—were asserted in the Iowa case.

Further, the issue of whether the Bitcoin Depot T&Cs are unenforceable because Cason was under duress when he entered into them is completely divorced from whether Mooneyham was under duress at the time she entered into the Bitcoin Depot T&Cs. Indeed, as Mooneyham points out, determining whether duress exists requires a "subjective inquiry focused on the individual plaintiff's state of mind." ECF No. 25 at 11-12 (citing *Gainey*, 382 S.C. at 428, 675 S.E.2d at 799). The context of the scam in each case is also materially different. The scammer in the Iowa case threatened to turn Cason into the FBI for possession of child pornography. ECF No. 25-3 at 1. Mooneyham was never threatened. Rather, Mooneyham claims the scammer told her that her bank account was hacked. ECF No. 25-2 at 2. Further, Mooneyham claims that, among

6

other factors, her age, unfamiliarity with Bitcoin, fatigue, and the scammer's expressions of "ang[er] and frustrat[ion]" on the phone led to her duress—none of which were raised in the Iowa case. *Id*. at 2-3.

Most importantly, only one of the four parties from this case participated in the Iowa case.[7] The Bitcoin Depot kiosk in the Iowa case was at "the Hawks Smoke Shop." ECF No. 25-3 at 1. It was not at a Circle K store and Circle K was not a party to that litigation. As Mooneyham concedes (ECF No. 25 at 16), defensive issue preclusion can be used only to bind non-parties to the original litigation when that non-party was "so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution." *Am. Fam. Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 164 (Iowa 1997).[8] Mooneyham suggests Circle K's "partnership" with Bitcoin "regarding the placement and use of the Bitcoin ATMs in their stores" makes Circle K's interest "so connected" to Bitcoin Depot's interest that Circle K's absence from the Iowa case is excused. ECF No. 25 at 16-17. Not so. Bitcoin Depot supplied a product to a store, Circle K. A product supplier's interest and the store's interest are *not* inherently connected and often diverge. If each of Circle K's suppliers (such as Bitcoin Depot) sufficiently represented Circle K's interests in litigation against them, Circle K would be subject to legal consequences from jurisdictions across the world in litigation that Circle K may not even know about.

Moreover, a party does not have a full and fair opportunity to litigate an issue when the amount in controversy in the first action is much smaller than the amount in controversy in the

---

[7] The Iowa state court ruling Mooneyham cites involved Bitcoin Depot Operating, LLC. It did not involve Mooneyham, Circle K, or Bitcoin Depot, Inc. *See* ECF No. 25-3 at 1.

[8] Circle K disagrees that Mooneyham's use of issue preclusion here is defensive. However Mooneyham's argument fails even when accounting for the broader scope afforded to defensive issue preclusion.

second, as "few litigants would spend $50,000 to defend a $5,000 claim." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 159, 135 S.Ct. 1293, 1309 (2015) (citations omitted). As the Supreme Court has explicitly cautioned, parties litigate matters of different size differently. *Id.* The Iowa property seizure case involved a dispute over who had the right to $14,800 that was deposited into a Bitcoin Depot kiosk at the Hawks Smoke Shop, while Mooneyham and her proposed class seek millions of dollars from Circle K.

Even when permitting a party to litigate its claims and defenses could result in an inconsistent verdict, barring a party who has never had the opportunity to litigate would be a "more serious injustice." *Lyons v. Andersen*, 123 F.Supp.2d 485, 501 (N.D. Iowa 2000). This is particularly true since the Iowa case has been appealed.[9] *See B & B Hardware*, 575 U.S. at 148, 135 S.Ct. at 1303 (explaining that issue preclusion only applies when an issue is litigated to a valid and final judgment). Prohibiting Circle K from enforcing an arbitration agreement against Mooneyham based on an out-of-state ruling from a state court judge involving different parties, different facts, different legal standards, and different issues would be a "serious injustice."

### 3. The Bitcoin Depot T&Cs are not unenforceable merely because it is an adhesion contract.

Mooneyham seems to argue that she did not waive her right to pursue a class action because of "the context" and because the Bitcoin Depot T&Cs is unconscionable due to its adhesive nature. ECF No. 25 at 17-21. As an initial matter, it is unclear whether this argument pertains to all of the Bitcoin Depot T&Cs (including the arbitration provision). Regardless, Mooneyham's argument fails under applicable state and federal law.

---

[9] *See In re Property Seized from Cason*, No. 24-0879 (Iowa Ct. App. filed May 23, 2024).

Adhesion contracts are a standard form of contract offered on a "take-it-or-leave-it" basis with terms that are not negotiable. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 26-27, 644 S.E.2d 663, 669 (2007) (citing *Munoz v. Green Tree Fin. Corp.,* 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001)). Modern consumer contracts are almost universally adhesion contracts. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47, 131 S.Ct. 1740, 1750 (2011) ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Adhesion contracts are only unconscionable when there is an absence of meaningful choice for one party due to one-sided contract provisions, together with terms "that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668 (citation omitted). Adhesion contracts, including clickwrap contracts containing arbitration agreements, are routinely enforced by this Court. *See, e.g.*, *Rock v. Solar Rating & Certification Corp.*, No. 8:17-CV-3401, 2018 WL 3750617, at *5-7 (D.S.C. July 23, 2018), *report and recommendation adopted*, No. 8:17-CV-3401, 2018 WL 3745057 (D.S.C. Aug. 7, 2018) (holding that plaintiff's clicking of an electronic "I agree" box represented acknowledgement and acceptance of the terms); *Church v. Hotels.com L.P.*, No. CV 2:18-18, 2018 WL 3130615, at *2 (D.S.C. June 26, 2018) (compelling arbitration because plaintiff had notice of the service terms because of his clicking "Complete Reservation."). Because Mooneyham has no basis to suggest— and has not suggested—that the Bitcoin Depot T&Cs are "so oppressive that no reasonable person would make them and no fair and honest person would accept them," *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668, those terms are enforceable.

Mooneyham does not argue that South Carolina law prohibits the enforcement of the class action waiver and arbitration agreement in the Bitcoin Depot T&Cs. But even if she had, that argument would fail under the Federal Arbitration Act (the "FAA"). The "Supreme Court of the

9

United States [has] held that state law is preempted when it 'allows any party to a consumer contract to demand classwide arbitration,' notwithstanding the presence of a class arbitration waiver in an otherwise valid arbitration agreement." *York v. Dodgeland of Columbia, Inc.*, 406 S.C. 67, 92, 749 S.E.2d 139, 152 (Ct. App. 2013) (quoting *Concepcion*, 563 U.S. at 346, 131 S.Ct. at 1750).[10] "[N]umerous other jurisdictions now apply *Concepcion* to preempt similar state laws that, if not preempted, would invalidate class action waivers on public policy grounds." *York*, 406 S.C. at 93, 749 S.E.2d at 152 (collecting cases). Instead, class actions are permissible under the FAA only when the parties specifically consent. *Concepcion*, 563 U.S. at 347-48, 131 S.Ct. at 1750-51 (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S.Ct. 1758, 1773 (2010)).

Accordingly, the Bitcoin Depot T&Cs—including the arbitration agreement and class action waiver—are enforceable under state and federal law.

**B. The public nuisance claim cannot be pursued on an individual or class-wide basis.**

Mooneyham's public nuisance claim fails on both an individual and class-wide basis because the harm allegedly suffered by Mooneyham, her proposed class, and the public are all the same and because Bitcoin Depot kiosks are harmful only when misused by criminal third parties. Without special damages caused by an inherently harmful instrumentality, Mooneyham's individual claim must be dismissed, and the supporting class allegations must be stricken.

---

[10] In *Concepcion*, the Court reviewed a California decision in which class action waivers in adhesion contracts were held per se unconscionable. *Concepcion*, 563 U.S. at 340, 131 S.Ct. at 1746 (citing *Discover Bank v. Superior Court,* 30 Cal. Rptr.3d 76, 113 P.3d 1100 (2005)). The Supreme Court reversed, holding a state law rendering class action waivers unenforceable for unconscionability was preempted by the FAA because that law stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of" the FAA. *Id.* at 352, 131 S.Ct. at 1753 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

### 1. Neither Mooneyham nor the proposed class have suffered special damages.

Mooneyham asserts that her "loss of her monetary assets" is "distinct and different" from injuries the Bitcoin Depot kiosks cause to the public generally. ECF No. 25 at 22-23. Mooneyham argues, unlike her "special damages," the public is harmed because the kiosks "attract and facilitate criminal conduct." *Id*. Even if Mooneyham's assertions about the Bitcoin Depot kiosks are true, which they are not, none of Mooneyham's arguments prove she suffered special damages to support a public nuisance claim.

Mooneyham's refusal to meaningfully engage with the law Circle K cites is telling. In South Carolina, damages are only "special" when they are "of a special character, distinct and different from the injuries suffered by the public generally." *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n,* 407 S.C. 67, 78, 753 S.E.2d 846, 852 (2014). For example: "[A]lthough Plaintiffs allege that they have suffered special damages because they live in close proximity to the Landfill, the injuries they allege are at most different in degree from the rest of the community, not different in kind. That difference in degree is not enough to constitute nuisance under South Carolina law." *Johnston v. Anderson Reg'l Landfill, LLC*, No. 8:23-CV-01417, 2024 WL 1287202, at *5 (D.S.C. Mar. 26, 2024) (cleaned up).

Here, neither Mooneyham nor her proposed class have suffered damages of a special character different in kind or type from the injuries the public allegedly suffered. Mooneyham's Complaint emphasizes that the public suffers from the precise harm for which she now seeks millions of dollars in damages on a class-wide basis:

> The presence of Bitcoin Depot ATMs have had a negative effect **on a number of persons in South Carolina and society at large by serving as a vehicle for cryptocurrency scams**, by permitting the unchecked laundering of illicit funds the procurement of such funds which contribute to criminal conduct in the community, by facilitating the sale of illegal goods and services within the community, and by

11

> preying upon unsophisticated users by charging an exorbitant and usurious markup on the market price of BTC.

ECF No. 1-1 ¶ 89 (emphasis added). The harm of Bitcoin kiosks "serving as a vehicle for cryptocurrency scams" is precisely the same harm Mooneyham claims she suffered in this case.

Mooneyham's citation to S.C. Code Ann. § 15-43-10 offers no help. If someone is "guilty of a nuisance" under that section, the remedy is not special damages under a public nuisance cause of action, like in this lawsuit. Rather, "the Attorney General, the solicitor . . . or any citizen of the State may maintain an action in equity in the name of the State . . . to enjoin perpetually such nuisance." S.C. Code Ann. § 15-43-20. Because the harm to the individual is the same as the harm to the public generally, the South Carolina General Assembly determined the proper remedy is not money, but instead an injunction in a case brought on behalf of the public.

While Mooneyham's harm is unfortunate, it is not "distinct and different" from the purported injuries suffered by the public because of Bitcoin Depot kiosks. Therefore, her public nuisance claim fails on both an individual and class-wide basis.

### 2. South Carolina law does not recognize public nuisance claims based on the unlawful misuse of a lawful product.

Mooneyham next argues that her public nuisance claim should survive because a public nuisance can arise from a lawful business. ECF No. 25 at 24-25. Mooneyham's argument misses the point. South Carolina law makes clear that public nuisance claims are intended to address *inherently harmful* instrumentalities and properties, as opposed to an unlawful misuse of an instrumentality by a criminal third-party.

"Nothing is a public nuisance which the law itself authorizes." *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) (citing *Law v. City of Spartanburg*, 148 S.C. 229, 229, 146 S.E. 12, 14 (1928)). In *Home Sales*, a landowner asserted a public nuisance claim because after the city opened a public street, the area had littering,

12

unreasonable noise, people sleeping on the beach, and light being shined into the landowner's home. *Id.* at 73-74, 382 S.E.2d at 465. The South Carolina Court of Appeals held that the landowner did not have an actionable public nuisance claim against the city because "[i]f a nuisance did in fact develop or was in fact created by circumstances, these **circumstances were the results of those who used the street in the manner complained of by [landowner] and not by any act of the City itself.**" *Id.* at 81-82, 382 S.E.2d at 469 (emphasis added). Notably, the South Carolina Supreme Court has cited *Home Sales* as "clearly dispositive" on whether misuse of an instrumentality by a third party renders the instrumentality a public nuisance. *Brading v. Cnty. of Georgetown*, 327 S.C. 107, 115, 490 S.E.2d 4, 8 (1997).

Here, Circle K's placement of Bitcoin Depot kiosks in its stores is not a public nuisance because the kiosks themselves are not inherently harmful. Instead, just as in *Home Sales*, any interference with Mooneyham's or the public's enjoyment of life or property is the result "of those who use the [kiosks] in the manner complained of," and not by Circle K's actions.

The cases Mooneyham cites, many of which predate *Home Sales* and *Brading*, stand for the unremarkable proposition that a nuisance is not excused by the fact that it arises from a lawful business. Circle K agrees. Many of South Carolina's public nuisance cases involve instrumentalities that are legal. *See Neal v. Darby*, 282 S.C. 277, 318 S.E.2d 18 (Ct. App. 1984) (affirming an injunction preventing further chemical dumping at an odorous landfill); *Shaw v. Coleman*, 373 S.C. 485, 645 S.E.2d 252 (Ct. App. 2007) (affirming an injunction preventing the continuous firing of guns because of the excessive noise and threats posed to nearby landowners). The key distinction is that things like malodorous landfills and threatening gun ranges can be inherently harmful; they are not instrumentalities that *could be* used by third parties to cause harm.

Mooneyham points to a case from 1942 to support her argument that public nuisance claims can arise from the operation of a lawful business. *See* ECF No. 25 at 24 (citing *State v. Turner*, 198 S.C. 487, 18 S.E.2d 372 (1942)). But *Turner* involved a *criminal* public nuisance charge imposed on a bar for letting its patrons dance, drink, swear, quarrel, and "make loud and disturbing noises." *Id.* at 372-75. Such an expansive view of public nuisance reflects the culture of a bygone era, as shown by the more recent decisions in *Home Sales* and *Brading*.

Mooneyham also criticizes the firearm cases Circle K cites, but those cases are directly on point—public nuisance liability should not extend to plaintiffs injured by a third party's misuse of an otherwise lawful product. For example, in *City of Chicago v. Beretta U.S.A. Corp.*, the Supreme Court of Illinois gave several examples of legal products that may cause harm, such as "a gun, liquor, a car, [or] a cell phone." 213 Ill. 2d 351, 374-75, 821 N.E.2d 1099, 1116 (2004).[11] Focusing on alcohol as an example, the *Beretta* Court noted "the purchase and consumption of alcohol by adults is legal, while driving under the influence is a crime." *Id*. "If there is public right to be free from the threat that others may use a lawful product to break the law, that right would include the right to drive upon the highways, free from the risk of injury posed by drunk drivers." *Id*. That "public right" would impose public nuisance claims on "brewers and distillers, distributing companies . . . and all of whom could be said to contribute to an interference with the public right." *Id*. But that is not the law. Public nuisance claims require a showing of special damages, separate and apart from harm to the public.

---

[11] Several other jurisdictions have reached the same conclusion that the court reached in *City of Chicago*. *See, e.g.*, *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536 (3d Cir. 2001); *Dist. of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633 (D.C. 2005); *People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 309 A.D.2d 91, 761 N.Y.S.2d 192 (N.Y. App. Div. 2003).

The same logic applies here.  A Bitcoin Depot kiosk on its own is a legal product.  Only when a third-party misuses the product, such as a vehicle to perpetrate a scam, is someone potentially harmed.  Imposing public nuisance liability on Circle K for housing the kiosk would drastically expand the scope of public nuisance claims under South Carolina law.  It would open the door to claims against sellers of everyday lawful products that *could be* used unlawfully to harm the public.

### III.  CONCLUSION

For the foregoing reasons, this Court should compel Mooneyham to arbitrate all of her claims against Circle K and should stay this action pending the outcome of that arbitration. Alternatively, this Court should strike Mooneyham's class allegations in support of each of her claims against Circle K and should dismiss her individual public nuisance claim.

This 22nd day of July, 2024.

       */s/ Amanda Pickens Nitto*
       Stephen M. Cox
       Federal I.D. No. 6913
       scox@robinsonbradshaw.com

       Amanda Pickens Nitto
       Federal I.D. No. 12620
       anitto@robinsonbradshaw.com

       Benjamin C. DeCelle
       Federal I.D. No. 12995
       bdecelle@robinsonbradshaw.com

       ROBINSON BRADSHAW & HINSON, P.A.
       202 E. Main St., Ste. 201
       Rock Hill, South Carolina 29730
       Telephone:   803.325.2900
       Facsimile:    803.325.2929

       *Attorneys for Defendant Circle K Stores Inc.*